## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SAMANTHA SOLIVAN, on behalf of herself
and all others similarly situated,

                Plaintiff(s),


          -against-


SOUTHWOOD FINANCIAL LLC;
SOUTHWOOD FINANCIAL TRUST I,

                Defendant(s).

Civil Case Number: _____

### CIVIL ACTION

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### LOCAL CIVIL RULE 10.1 STATEMENT

1.     The mailing addresses of the parties to this action are:

SAMANTHA SOLIVAN
398 New Brunswick Avenue
Perth Amboy, New Jersey 08861

SOUTHWOOD FINANCIAL LLC
45610 Woodland Road, Suite 440
Sterling, Virginia 20166

SOUTHWOOD FINANCIAL TRUST I
45610 Woodland Road, Suite 440
Sterling, Virginia 20166

### PRELIMINARY STATEMENT

2.     Plaintiff on behalf of herself and all others similarly situated ("Plaintiff"), by and

through her attorneys, alleges that Defendants, SOUTHWOOD FINANCIAL LLC ("SF, LLC");

SOUTHWOOD FINANCIAL TRUST I ("SFT I") and JOHN DOES 1-25 their employees, agents

and successors (collectively "Defendants") violated 15 U.S.C. § 1692 *et seq*., the Fair Debt

Collection Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This is an action for violations of 15 U.S.C. § 1692 *et seq*.

4.    Venue is proper in this district under 28 U.S.C. §1391(b) and 15 U.S.C. § 1692k(d) because the acts of the Defendant that give rise to this action, occurred in substantial part, in this district.

## DEFINITIONS

5.    As used in this complaint, the terms "creditor," "consumer," "debt" and "debt collector" are defined at 15 U.S.C. § 1692a.

## PARTIES

6.    Plaintiff is a natural person, a resident of Middlesex County, New Jersey and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

7.    SF, LLC maintains a location at 45610 Woodland Road, Suite 440, Sterling, Virginia 20166.

8.    SFT I maintains a location at 45610 Woodland Road, Suite 440, Sterling, Virginia 20166.

9.    SF, LLC uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and/or to regularly engage in the collection or attempt to collect debt asserted to be due or owed to another.

10.    SFT I uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt.

11.     SF, LLC is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6), and it uses litigation and non-litigation methods in its attempts to collect debts.

12.     SFT I is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6) ), and it uses litigation and non-litigation methods in its attempts to collect debts.

13.     John Does 1-25, are currently unknown Defendants whose identities will be obtained in discovery and at that time will be made parties to this action pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"); Rule 15, Rule 20 and Rule 21. Plaintiff's claims against the currently unknown Defendants arise out of the same transaction, occurrence or series of transactions arising from known Defendant's actions and are due to common questions of law and fact whose joinder will promote litigation and judicial efficiency.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a state-wide class action, pursuant to Rule 23 of the FRCP, on behalf of herself and all New Jersey consumers and their successors in interest (the "Class"), who Defendants collected or attempted to collect a debt from, in violation of the FDCPA, as described in this Complaint.

15.     This Action is properly maintained as a class action. The Class is initially defined as:

> All New Jersey consumers who SF, LLC collected or attempted to collect a debt from, which was owned by SFT I.
>
> The Class period begins one year to the filing of this Action.
>
> The Class definition may be subsequently modified or refined.

16.    The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

    a.    <u>Numerosity:</u> The Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons in New Jersey who Defendant(s) collected or attempted to collect a debt from, which violates specific provisions of the FDCPA.

    b.    <u>Commonality:</u> There are questions of law and fact common to the class members which predominate over questions affecting any individual Class member.    These common questions of law and fact include, without limitation:

        i.    Whether the Defendants violated various provisions of the FDCPA as set forth herein:

        ii.    Whether Plaintiff and the Class have been injured by the Defendants' conduct;

        iii.    Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

        iv.    Whether Plaintiff and the Class are entitled to declaratory relief.

    c.    <u>Typicality:</u> Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

    d.    <u>Adequacy of Representation:</u> Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class. Plaintiff will

fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

17.     A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates no unusual difficulties in the management of this class action.

18.     A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as damages.

19.     Defendant(s) have acted on grounds generally applicable to the entire Class, thereby making appropriate final relief with respect to the Class as a whole.

## STATEMENT OF FACTS

20.     Plaintiff is at all times to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

21.     At some time prior to April 23, 2025, Plaintiff allegedly incurred a financial obligation to COLLEGE AVENUE STUDENT LOANS ("COLLEGE AVENUE").

22.     The COLLEGE AVENUE obligation arose out of a transaction, in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes.

23.     Plaintiff incurred the COLLEGE AVENUE obligation by obtaining goods and services which were primarily for personal, family and household purposes.

24.    The COLLEGE AVENUE obligation did not arise out of a transaction that was for non-personal use.

25.    The COLLEGE AVENUE obligation did not arise out of a transaction that was for business use.

26.    Plaintiff incurred the COLLEGE AVENUE obligation in connection with a personal student loan.

27.    The COLLEGE AVENUE obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

28.    COLLEGE AVENUE is a "creditor" as defined by 15 U.S.C. § 1692a(4).

29.    At some time prior to April 23, 2025, the COLLEGE AVENUE obligation was allegedly purchased by and/or sold to SFT I.

30.    At the time the COLLEGE AVENUE obligation was purchased by and/or sold to SFT I, the obligation was in default.

31.    The principal purpose of SFT I is the collection of debts which are in default at the time it purchases the debts.

32.    SFT I did not obtain a license from the New Jersey Department of Banking and Insurance prior to it making any of its attempts to collect the COLLEGE AVENUE. See *Veras v. LVNV Funding, LLC*, 2014 U.S. Dist. LEXIS 34176 (D.N.J. Mar. 17, 2014); *Lopez v. Law Offices of Faloni & Associates,* 2016 U.S. Dist. LEXIS 124730 (D.N.J. Sept. 14, 2016); *Latteri v. Mayer*, 2018 U.S. Dist. LEXIS 85926 (D.N.J. May 22, 2018); and *New Century Fin. v. Trewin*, 2018 N.J. Super. Unpub. LEXIS 1688 (May 24, 2018).

33.    On or before April 23, 2025, SFT I, directly or through an agent, referred the COLLEGE AVENUE obligation to SF, LLC for the purpose of collections.

34.     At the time the COLLEGE AVENUE obligation was referred to SF, LLC the COLLEGE AVENUE obligation was in default.

35.     On or before April 23, 2025, the COLLEGE AVENUE obligation was referred to Weltman, Weinberg & Reis Co., L.P.A. for the purpose of collections.

36.     Among collection attempts made within the last year on the COLLEGE AVENUE obligation, on April 23, 2025 Defendants filed a complaint in the New Jersey Superior Court, Special Civil Part, Docket: DC-8769-25 ("Collection Complaint").  **See <u>Exhibit A</u>,** which is fully incorporated herein by reference.

37.     SFT I did not obtain a license from the New Jersey Department of Banking and Insurance prior to filing the Collection Complaint.  See *Veras v. LVNV Funding, LLC*, 2014 U.S. Dist. LEXIS 34176 (D.N.J. Mar. 17, 2014); *Lopez v. Law Offices of Faloni & Associates,* 2016 U.S. Dist. LEXIS 124730 (D.N.J. Sept. 14, 2016); *Latteri v. Mayer,* 2018 U.S. Dist. LEXIS 85926; and *New Century Fin. v. Trewin*, 2018 N.J. Super. Unpub. LEXIS 1688.

38.     The Collection Complaint was sent to Plaintiff in connection with the collection of the COLLEGE AVENUE obligation.

39.     The Collection Complaint is a "communication" as defined by 15 U.S.C. § 1692a(2).

40.     Upon receipt, Plaintiff read and relied on the statements and representations in the Collection Complaint.

41.     The outstanding balance claimed to be due by Defendants on the COLLEGE AVENUE obligation as of April 23, 2025 included an amount for interest, fees and/or other charges.

42.     SFT I is a consumer lender as defined at N.J.S.A. 17:11C-2 et seq.

43.    SFT I is in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amount of $50,000 or less.

44.    SFT I is a sales finance company as defined at N.J.S.A. 17:11C-2 and N.J.S.A. 17:16C-1 et seq.

45.    The COLLEGE AVENUE obligation is an open end loan as defined at N.J.S.A. 17:11C-2 and/or retail charge account as defined at N.J.S.A. 17:16C-1 et seq.

46.    Alternatively, the COLLEGE AVENUE obligation is a consumer loan as defined at N.J.S.A. 17:11C-2.

47.    SFT I engages in the consumer loan business as defined at N.J.S.A. 17:11C-2.

48.    SFT I engages in the business of purchasing defaulted consumer notes, defaulted consumer loans and/or defaulted retail charge accounts.

49.    At all times relevant to this matter, SFT I did not possess a license under authority of the New Jersey Consumer Finance Licensing Act.

50.    At all times relevant to this matter, SFT I did not possess a license issued by the New Jersey Department of Banking and Insurance.

51.    At all times relevant to this matter, SFT I did not possess a license under authority of the New Jersey Consumer Finance Licensing Act authorizing it to make consumer loans, or to buy, discount or endorse notes (loans), or to receive interest.

52.    As such, at no time was SF, LLC authorized by law to collect the COLLEGE AVENUE obligation.

53.    As such, at no time was SFT I authorized by law to collect the COLLEGE AVENUE obligation.

54.     As SFT I did not obtain the appropriate license under the New Jersey Consumer Finance Licensing Act during the time relevant to this matter, it was prohibited from attempting to collect on the COLLEGE AVENUE obligation.

55.     As SFT I did not obtain the appropriate license issued by the New Jersey Department of Banking and Insurance at all times relevant to this matter, it was prohibited from attempting to collect on the COLLEGE AVENUE obligation.

56.     As SFT I did not obtain the appropriate license under the New Jersey Consumer Finance Licensing Act at all times prior to April 23, 2025, SF, LLC was prohibited from attempting to collect on the COLLEGE AVENUE obligation.

57.     As SFT I did not obtain the appropriate license issued by the New Jersey Department of Banking and Insurance at all times prior to April 23, 2025, SF, LLC was prohibited from attempting to collect on the COLLEGE AVENUE obligation.

58.     As described herein, Defendants engaged in fraudulent misrepresentation in connection with their attempts to collect the COLLEGE AVENUE obligation.

59.     In essence, the Defendants attempted to make Plaintiff believe that the attempts to collect the COLLEGE AVENUE obligation were valid in order to trick Plaintiff into paying it.

60.     The Collection Complaint frustrated Plaintiff's ability to intelligently choose a response.

61.     The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

62.    As described herein, Defendant engaged in abusive debt collection practices against the Plaintiff which deprived Plaintiff of the right to enjoy the benefits provided by the FDCPA.

63.    SF, LLC knew or should have known that its actions violated the FDCPA.

64.    SFT I knew or should have known that its actions violated the FDCPA.

65.    Defendants could have taken the steps necessary to bring their actions within compliance with the FDCPA but neglected to do so and failed to adequately review their actions to ensure compliance with the law.

### POLICIES AND PRACTICES COMPLAINED OF

66.    It is Defendants' policy and practice to collect or attempt to collect debts, which violate the FDCPA, by *inter alia*:

    (a)    Using false, deceptive or misleading representations or means in connection with the collection of a debt; and

    (b)    Making a false representation of the character or amount of the debt;

    (c)    Threatening to take any action that cannot legally be taken; and

    (d)    Using unfair or unconscionable means to collect or attempt to collect any debt.

67.    Defendants have made collection attempts against at least 50 natural persons in the state of New Jersey within one year of this Complaint on behalf of SFT I.

### COUNT I
### FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq*.  VIOLATIONS

68.    Plaintiff, on behalf of herself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

69.    Collection communications, such as those of Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

70.    Defendants' communications would cause the least sophisticated consumer to be confused about his or her rights.

71.    Defendants' communications would mislead the least sophisticated consumer to believe that Defendants could legally attempt to collect the debt.

72.    Defendants' communications would cause the least sophisticated consumer to believe that Defendants had the legal ability to attempt to collect the debt and that SFT I had acquired the appropriate licenses or had otherwise complied with New Jersey regulations.

73.    A violation of New Jersey laws, despite no private cause of action, can form the basis of a violation of the FDCPA. See *Chulsky v. Hudson Law Offices, P.C.,* 777 F.Supp.2d 823 (D.N.J. 2011).

74.    Defendants' attempt to collect the alleged debt without first obtaining the license(s) and/or registrations necessary under New Jersey law violated various provisions of the FDCPA including but not limited to:  15 U.S.C. § 1692e; § 1692e(2)(A); § 1692e(5); § 1692e(10); and § 1692f *et seq*.

75.    Defendants violated 15 U.S.C. § 1692e of the FDCPA by using any false, deceptive or misleading representation or means in connection with their attempts to collect debts from Plaintiff and others similarly situated.

76.    Defendants violated 15 U.S.C. § 1692e of the FDCPA in connection with their communications to Plaintiff and others similarly situated.

77.    Defendants violated 15 U.S.C. § 1692e of the FDCPA by falsely implying that they had the right or legal authority to collect debts from Plaintiff and others similarly situated.

78.    Defendants' false, misleading and deceptive statement(s) is material to the least sophisticated consumer.

79.      15 U.S.C. § 1692e(2)(A) of the FDCPA prohibits a debt collector from making a false representation of the character, amount or legal status of a debt.

80.      Defendants violated 15 U.S.C. § 1692e(2)(A) by making false representations of the character, amount or legal status of a debt.

81.      Defendants violated 15 U.S.C. § 1692e(2)(A) as Defendants were prohibited from charging or collecting any interest under the New Jersey Consumer Finance Licensing Act.

82.      Defendants violated 15 U.S.C. § 1692e(2)(A) as Defendants were prohibited from collecting on the COLLEGE AVENUE obligation because they failed to comply with the New Jersey Consumer Finance Licensing Act.

83.      As described herein, Defendants violated 15 U.S.C. § 1692e(2)(A).

84.      15 U.S.C. § 1692e(5) of the FDCPA prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken.

85.      Defendants violated 15 U.S.C. § 1692e(5) by attempting to collect the alleged debt without first obtaining the license(s) necessary under New Jersey law.

86.      As described herein, Defendants violated 15 U.S.C. § 1692e(5).

87.      15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

88.      Defendants violated 15 U.S.C. § 1692e(10) by attempting to collect the alleged debt without first obtaining the license(s) necessary under New Jersey law.

89.      As described herein, Defendants violated 15 U.S.C. § 1692e(10).

90.      15 U.S.C. § 1692f *et seq.* of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.

91.    Defendants violated 15 U.S.C. § 1692f *et seq.* of the FDCPA by attempting to collect interest, which it is not authorized or permitted by law to charge or collect.

92.    Defendants should be disgorged of all money collected from members of the class during the relevant period as ill-gotten gains.

93.    Defendant SFT I is vicariously liable for any violations of the FDCPA that SF, LLC committed as described herein. See *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379 (3d Cir. 2000).

94.    Congress enacted the FDCPA in part to eliminate abusive debt collection practices by debt collectors.

95.    Plaintiff and others similarly situated have a right to be free from abusive debt collection practices by debt collectors.

96.    Plaintiff and others similarly situated have a right to receive proper notices mandated by the FDCPA.

97.    Plaintiff and others similarly situated were sent communications, which could have affected their decision-making with regard to the debt.

98.    Plaintiff and others similarly situated have suffered harm as a direct result of the abusive, deceptive and unfair collection practices described herein.

99.    Plaintiff has suffered damages and other harm as a direct result of Defendants actions, conduct, omissions and violations of the FDCPA described herein.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and her attorneys as Class Counsel;

(b)    Awarding Plaintiff and the Class statutory damages;

(c)      Awarding Plaintiff and the Class actual damages, including but not limited to a disgorgement of all money collected during the relevant period;

(d)      Awarding pre-judgment interest;

(e)      Awarding post-judgment interest.

(f)      Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses; and

(g)      Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## CERTIFICATION  PURSUANT TO LOCAL RULE 11.2

I, hereby certify that the matter in controversy is not the subject matter of any other court, arbitration or administrative proceeding, other than one pending in the Superior Court of New Jersey, Monmouth County, Law Division, Special Civil Part, Docket No.: DC-007244-23.

Dated: June 23, 2025

*s/ Joseph K. Jones*
Joseph K. Jones, Esq. (002182006)
JONES, WOLF & KAPASI, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com
*Attorneys for Plaintiff*

# EXHIBIT

# A

**WELTMAN, WEINBERG & REIS CO., L.P.A.**
A LEGAL PROFESSIONAL ASSOCIATION
FORMED IN THE STATE OF OHIO
BY: SCOTT J. BREST, ESQUIRE                    **ATTORNEY FOR PLAINTIFF(S)**
NJ I.D. 035009-2004
520 WALNUT STREET, SUITE 1355
PHILADELPHIA, PA 19106
PHONE: 800-589-8516
CONSUMER INQUIRIES: 800-589-8516
FAX: 215-599-1505
EMAIL: PHILAW@WELTMAN.COM
WWR# 041516562

---

| | |
|---|---|
| SOUTHWOOD FINANCIAL LLC AS TRUST MANAGER FOR SOUTHWOOD FINANCIAL TRUST I | SUPERIOR COURT OF NEW JERSEY |
| assignee of | MIDDLESEX COUNTY |
| College Ave | SPECIAL CIVIL PART |
| PLAINTIFF | DOCKET NO.: |
| vs. | CIVIL ACTION |
| SAMANTHA SOLIVAN ANGELO SOLIVAN | COMPLAINT (CONTRACT) |
| DEFENDANTS | |

NOW COMES SOUTHWOOD FINANCIAL LLC AS TRUST MANAGER FOR SOUTHWOOD FINANCIAL TRUST I, by and through their attorneys, Defendant hereby complaint states:

1. Defendants, SAMANTHA SOLIVAN and ANGELO SOLIVAN, is(are) MIDDLESEX County, whose social security number(s) is(are) XXX-XX-X871 and XXX-XX-X006 subject to this court's jurisdiction.

2. Defendant entered into an agreement for and a credit with Credit Intent, Ave account number XXXXe1r40

3. Plaintiff is the purchaser Defend account owner Credit Intent grew of At said account and all rights as owner of the account. See Exhibit "A" attached hereto and incorporated herein.

4. Defendant failed to pay the balance due as set forth on "A" the account attached hereto and incorporated herein.

5. The amount currently due and owing on the account is $12,832.19

6. Plaintiff has made demand upon the Defendants and Defendants have failed to pay the amount claimed.

WHEREFORE, Plaintiff demands judgment against Defendants SAMANTHA SOLIVAN and ANGELO SOLIVAN in the $12,832.19 and court cost. In addition, Plaintiff does any attorney's fees.

### CERTIFICATION PURSUANT TO RULE 4:5-1

Plaintiff, by their attorneys, hereby certify that the matter in controversy is not pending or contemplated judicial or arbitration proceeding. parties which should be joined in this action

### CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I certify that confidential personal identifiers have been re court and be redacted from all documents submitted in the futur understand that if any of the foregoing statements made by me punishment.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R.4:25-4, SCOTT J. BEST, Esq. is hereby designated as trial co matter.

Weltman, Weinberg & Reis

s/SCOTT J. BEST
_____
SCOTT J. BEST, Esquire
Attorneys for Plaintiff

College Ave
230 N King St.
Wilmington, DE 19801



### NOTICE OF SALE AND TRANSFER OF YOUR STUDENT LOAN

06/19/2024

**Samantha Solivan**
**398 New Brunswick Ave**
**Perth Amboy, NJ 08861**

Dear Samantha Solivan,

This letter is to inform you that the below College Ave student loan has been charged off and sold. The sale and transfer do not affect the terms and conditions of the original loan agreement, and you are still responsible for the balance.

Your student loan has been sold and transferred to **Southwood Financial Trust I**. All inquiries and payments related to your loan should now be directed to your new servicer, identified below:

**Weltman, Weinberg & Reis Co LPA**
965 Keynote Circle
Cleveland, OH 44131
800-837-0603

**Sold Loan Account ID:** ████████8541

**Charge Off Date on Sold Loan Account:** 05/31/2024

**Date of Sale:** 06/24/2024

**Balance as of Sale Date**: The amount due on your account as of the Date of Sale was $12,832.19 (consisting of a post-charge-off principal balance of $11,723.40, unpaid interest of $1,083.79 and fees of $25.00).

As the new owner of your loan account, all future payment(s) on your loan account referenced above must be made to **Southwood Financial Trust I** c/o servicer Weltman, Weinberg & Reis Co LPA and may be made in any of the following ways:

1. Send payment to the address listed above.
2. Pay-by-Phone by calling the toll-free number listed above.

Any existing payment arrangement on file with College Ave Student Loans will be discontinued as of the Date of Sale listed above.

Weltman, Weinberg & Reis Co LPA will be sending out a communication with more details on the transition. In the meantime, if you have any questions regarding this notice or desire to obtain additional account information at no additional charge, please contact customer service representative toll-free at the number listed above.

Sincerely,

College Ave

College Ave
230 N King St.
Wilmington, DE 19801



### NOTICE OF SALE AND TRANSFER OF YOUR STUDENT LOAN

06/19/2024

**Angelo Solivan
54 Hamilton Ave
Fords, NJ 08863**

Dear Angelo Solivan,

This letter is to inform you that the below College Ave student loan has been charged off and sold. The sale and transfer do not affect the terms and conditions of the original loan agreement, and you are still responsible for the balance.

Your student loan has been sold and transferred to **Southwood Financial Trust I**. All inquiries and payments related to your loan should now be directed to your new servicer, identified below:

**Weltman, Weinberg & Reis Co LPA**
965 Keynote Circle
Cleveland, OH 44131
800-837-0603

**Sold Loan Account ID:** ████████8541

**Charge Off Date on Sold Loan Account:**  05/31/2024

**Date of Sale:** 06/24/2024

**Balance as of Sale Date**: The amount due on your account as of the Date of Sale was $12,832.19 (consisting of a post-charge-off principal balance of $11,723.40, unpaid interest of $1,083.79 and fees of $25.00).

 As the new owner of your loan account, all future payment(s) on your loan account referenced above must be made to **Southwood Financial Trust I** c/o servicer Weltman, Weinberg & Reis Co LPA and may be made in any of the following ways:

1. Send payment to the address listed above.
2. Pay-by-Phone by calling the toll-free number listed above.

Any existing payment arrangement on file with College Ave Student Loans will be discontinued as of the Date of Sale listed above.

Weltman, Weinberg & Reis Co LPA will be sending out a communication with more details on the transition. In the meantime, if you have any questions regarding this notice or desire to obtain additional account information at no additional charge, please contact customer service representative toll-free at the number listed above.

 Sincerely,

 College Ave



# Private Education Loan
# Applicant Self-Certification



OMB No. ███0101
Form Approved
Exp.Date 08-31-2022

**Important:** Pursuant to Section 155 of the Higher Education Act of 1965, as amended, (HEA) and to satisfy the requirements of Section 128(e)(3) of the Truth in Lending Act, a lender must obtain a self-certification signed by the applicant before disbursing a private education loan. The school is required on request to provide this form or the required information only for students admitted or enrolled at the school. Throughout this Applicant Self-Certification, "you" and "your" refer to the applicant who is applying for the loan. The applicant and the student may be the same person.

**Instructions:** Before signing, carefully read the entire form, including the definitions and other information on the following page. Submit the signed form to your lender.

---

### SECTION 1: NOTICES TO APPLICANT

- Free or lower-cost Title IV federal, state, or school student financial aid may be available in place of, or in addition to, a private education loan. To apply for Title IV federal grants, loans and work-study, submit a Free Application for Federal Student Aid (FAFSA) available at www.fafsa.ed.gov, or by calling 1-800-4-FED-AID, or from the school's financial aid office.
- A private education loan may reduce eligibility for free or lower-cost federal, state, or school student financial aid.
- You are **strongly** encouraged to pursue the availability of free or lower-cost financial aid with the school's financial aid office.
- The financial information required to complete this form can be obtained from the school's financial aid office. If the lender has provided this information, you should contact your school's financial aid office to verify this information and to discuss your financing options.

---

### SECTION 2: COST OF ATTENDANCE AND ESTIMATED FINANCIAL ASSISTANCE

**If information is not already entered below, obtain the needed information from the school's financial aid office and enter it on the appropriate line. Sign and date where indicated.**

    A.  Student's cost of attendance for the period of enrollment covered by the loan   $ 37,175.00

    B.  Estimated financial assistance for the period of enrollment covered by the loan   $ 14,500.00

    C.  Difference between amounts A and B   $ 22,675.00
       **WARNING:** If you borrow more than the amount on line C, you risk reducing your eligibility for free or lower-cost federal, state, or school financial aid.

---

### SECTION3: APPLICANT INFORMATION

**Enter or correct the information below.**

Full Name and Address of School   COLLEGE OF NEW JERSEY (THE)
   EWING, NJ, 08628

Applicant Name (last, first, MI)  SOLIVAN, SAMANTHA    Date of Birth (mm/dd/yyyy)  ██/1997

Permanent Street Address  398 NEW BRUNSWICK AVE

City, State, Zip Code  PERTH AMBOY, NJ, 08861

Area Code / Telephone Number Home  (732) 586-0220    Other  (732) 586-0220

E-mail Address  Samanthasolivan@gmail.com

Period of Enrollment Covered by the Loan (mm/dd/yyyy)  From  01/15/2022  to  05/15/2022

**If the student is _not_ the applicant, provide the student's name and date of birth.**

Student Name (last, first, MI) _____  Student Date of Birth (mm/dd/yyyy) _____

Doc ID: 20220124104808179
Sertifi Electronic Signature

---

**SECTION 4: APPLICANT SIGNATURE**

**I certify** that I have read and understood the notices in Section 1 and, that to the best of my knowledge, the information provided on this form is true and correct.

*Samantha Solivan*
samanthasolivan@gmail.com

**Signature of Applicant** _____     Date  (mm/dd/yyyy)   **01/24/2022**

---

**SECTION 5: DEFINITIONS**

**Cost of attendance** is an estimate of tuition and fees, room and board, transportation, and other costs for the period of enrollment covered by the loan, as determined by the school. A student's cost of attendance may be obtained from the school's financial aid office.

**Estimated financial assistance** is all federal, state, institutional (school), private, and other sources of assistance used in determining eligibility for most Title IV student financial aid, including amounts of financial assistance used to replace the expected family contribution. The student's estimated financial assistance is determined by the school and may be obtained from the school's financial aid office.

A **lender** is a private education lender as defined in Section 140 of the Truth in Lending Act and any other person engaged in the business of securing, making, or extending private education loans on behalf of the lender.

A **period of enrollment** is the academic year, academic term (such as semester, trimester, or quarter), or the number of weeks of instructional time for which the applicant is requesting the loan.

A **private education loan** is a loan provided by a private education lender that is not a Title IV loan and that is issued expressly for postsecondary education expenses, regardless of whether the loan is provided through the school that the student attends or directly to the borrower from the private education lender. A private education loan does not include (1) An extension of credit under an open-end consumer credit plan, a reverse mortgage transaction, a residential mortgage transaction, or any other loan that is secured by real property or a dwelling; or (2) An extension of credit in which the school is the lender if the term of the extension of credit is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than four installments.

**Title IV student financial aid** includes the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant (FSEOG) Program, the Federal Work-Study (FWS) Program, the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Perkins Loan Program, and the Teacher Education Assistance for College and Higher Education (TEACH) Grant Program. To apply for Title IV federal grants, loans, and work-study, submit a Free Application for Federal Student Aid (FAFSA), which is available at www.fafsa.gov, by calling 1-800-4-FED-AID, or from the school's financial aid office.

---

**SECTION 6: PAPERWORK REDUCTION NOTICE**

**Paperwork Reduction Notice:** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0101. The time required to complete this information collection is estimated to average 0.25 hours (15 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed and complete and review the information collection.

**If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:** U.S. Department of Education, Washington, DC 20202-4651.

**If you have any comments or concerns regarding the status of your individual submission of this form, contact your lender.**

College Ave **UNDERGRADUATE LOAN**
**FIRSTRUST SAVINGS BANK**

# Consumer Credit Agreement

LOAN DATE: 01/24/2022

ACCOUNT ID: ████████8435

LOAN NUMBER: ███████4674

LENDER: FIRSTRUST SAVINGS BANK

SCHOOL: COLLEGE OF NEW JERSEY (THE)

| STUDENT BORROWER | COSIGNER |
|---|---|
| SAMANTHA   SOLIVAN | ANGELO  SOLIVAN JR |
| 398 NEW BRUNSWICK AVE<br>PERTH AMBOY, NJ 08861 | 54 HAMILTON AVE<br>FORDS, NJ 08863 |

---

**Student Borrower Acknowledgment:  Prior to signing this Agreement, I have read and understood all the provisions of this Agreement. I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.**

---

**NOTICE TO CUSTOMER: (A) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED; (B) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES; (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN; (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT.**

## Student Borrower Signature & Date

**ALABAMA RESIDENTS:  CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

SAMANTHA   SOLIVAN
Signature of Student Borrower

X
*Samantha Solivan*
samanthasolivan@gmail.com

Date  **01/24/2022**

College Ave UNDERGRADUATE LOAN

FIRSTRUST SAVINGS BANK

# Consumer Credit Agreement

**Cosigner Acknowledgment:  Prior to signing this Agreement below, I have read and understood all the provisions of this Agreement (including without limitation Sections 25, 26, & 27 and the Notice to Cosigner). I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.**

ARIZONA RESIDENTS ONLY: For purposes of this notice, the words "you" and "your" refer to the Cosigner: Marital Community Property Joinder: If you are a married Arizona resident your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will properly notify your spouse and join him or her to this loan obligation in accordance with Ariz. Rev. Stat. § 25-214 or other applicable law. You further affirm that no provision of any marital property agreement or court decree adversely affects your interest in this loan obligation.

GEORGIA RESIDENTS ONLY:  I waive any right to require the Lender to take action against the principals as required in O.C.G.A. §10-7-24.

NORTH CAROLINA RESIDENTS ONLY:  By signing as Cosigner, I waive any right I have to require the Lender to proceed in accordance with the  provisions of North Carolina General Statutes § 26-7 through § 26-9 and acknowledge that the Lender may proceed against me without first proceeding against the Student Borrower or any collateral for the loan.

**VERMONT RESIDENTS ONLY: For purposes of this notice, the word "you" means the Cosigner(s). NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE STUDENT BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**NOTICE TO CUSTOMER: (A) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED; (B) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES; (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN; (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT.**

## Cosigner Signature & Date

**ALABAMA RESIDENTS:  CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Signature of Cosigner

X _____                                  Date _____

COSIGNERS RESIDING IN CALIFORNIA, COLORADO, IOWA, MAINE, NEW YORK, SOUTH CAROLINA, WEST VIRGINIA OR WISCONSIN: In addition to this agreement, you must also read and sign an additional cosigner notification page.

College Ave UNDERGRADUATE LOAN

FIRSTRUST SAVINGS BANK

# Consumer Credit Agreement
This is a consumer credit transaction.

## Non-negotiable consumer note.

**READ ALL YOUR LOAN DOCUMENTS BEFORE SIGNING THIS AGREEMENT.**

**(no alterations of this form will be accepted)**

**This Agreement contains all of the terms and conditions that apply to this Loan. This Agreement completely replaces any earlier understandings or communications the Student Borrower or Cosigner may have had with the Lender, the School or any other party about the Loan.**

**Before signing this Agreement, I have read, understood and agreed to all the provisions of this Agreement, including without limitation Section 27 (Arbitration Agreement) if applicable. I agree to the terms of this Agreement and acknowledge receiving a complete copy of this Agreement. Furthermore, I understand that consummation of this transaction does not occur upon the signing of this Agreement, but rather upon the disbursement of funds by the Lender as set forth in Sections 5 and 7 below, meaning that my obligations under this Agreement only arise once such funds are disbursed. I agree that any and all proceeds of this Loan will be used solely for educational purposes as set forth in Section 2 below.**

## 1. DEFINITIONS

a. In this Credit Agreement (the "**Agreement**"), the words "**I**", "**me**", "**mine**", "**my**", mean each person who signs this Agreement as Student Borrower or as Cosigner, jointly and severally unless the applicable language specifically refers to only one or the other or specifies a different meaning.

b. "**Application**" means the application for a Loan submitted by me for this Loan (as applicable).

c. "**Business Days**" are Monday through Friday, excluding (a) days when a bank in the COMMONWEALTH OF PENNSYLVANIA is required or permitted to be closed, and (b) days when the New York Stock Exchange is closed.

d. "**Disbursement Amount**" means any amounts disbursed by the Lender and received by the School. The Disbursement Amount will not exceed the lesser of the amount requested by me or the amount approved by the School.

e. "**Disbursement Date**" means the date on any Loan check or any date the Lender electronically transmits funds to the School.

f. "**Disclosure Statement**" means any Application and Solicitation Disclosure, Approval Disclosure and/or Final Disclosure pursuant to the Federal Truth in Lending Act collectively that may be provided separately from or in conjunction with this Agreement. The Approval Disclosure and the Final Disclosure are incorporated by reference into this Agreement. In the event of any conflict between the terms of the Final Disclosure and this Agreement, the Final Disclosure shall govern.

g. "**In-School Period**" means the time period beginning with the first Disbursement Date, continuing while the Student Borrower is attending the School, and ending 6 months after: (i) the Student Borrower's withdrawal or dismissal from the School; (ii) the Student Borrower is no longer attending the School, or (iii) the Student Borrower graduates from the School.

h. "**Lender**", "**you**" and "**your**" means FIRSTRUST SAVINGS BANK , or any subsequent holder of this Agreement, and also any agent or servicer acting on behalf of Lender or any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

i. "**Loan**" means any and all loan advances made by the Lender under the terms and conditions of this Agreement.

j. "**Loan Origination Fee**" means a fee assessed by the Lender on any Disbursement Amount.

k. "**Loan Period**" means the time period specified by the School regardless of whether a different period was specified by me in the Application. This represents the corresponding academic period for which I am requesting the Loan.

l.  "**Qualified Higher Education Expenses**" means the costs of attending an eligible educational institution, including graduate school, as defined at 26 U.S.C. Sec. 221(d)(2).  Generally, these costs include tuition and certain related expenses. See IRS Publication 970 for more information.

m. "**Principal**" means (i) the Disbursement Amount plus (ii) any Loan Origination Fee under Section 3 below plus (iii) any accrued but unpaid interest under Section 4 below which is capitalized by adding it to the unpaid principal balance.

n. "**Repayment Period**" means the time period beginning on the first day after the In-School Period ends, and ending when the Loan is paid in full.  Under the terms of this Agreement, the number of monthly payments in my Repayment Period is set forth in my Disclosure Statement.

o. "**School**" means the entity set forth above in the field labeled "School."

p. "**Servicer**" means College Ave Student Loan Servicing, LLC, or any subsequent servicer of this Agreement, and also any agent or servicer acting on behalf of any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

## 2.  LOAN PURPOSE

a. By signing this Agreement, I certify to Lender that the proceeds of the Loan will be used only to pay for Qualified Higher Education Expenses relating to my enrollment and attendance at the School during the Loan Period, as approved by the School and/or Lender, as applicable.  Moreover, I agree to return to the Lender any Loan proceeds not attributable to such Qualified Higher Education Expenses.

## 3.  PROMISE TO PAY

a. I promise to pay to the order of the Lender the Principal, accrued interest as described in Section 4 below (see also Section 10) and all other charges, fees and costs that become due as required in this Agreement. In the event of default, I also promise to pay reasonable attorney's fees, and reasonable collection agency commissions, fees and costs, court and other collection costs, unless prohibited by applicable law. I understand that I will be liable to pay all of these amounts, in full, even if another person also signs this Agreement.

b. **Loan Fee.** I promise to pay you a Loan Origination Fee, if applicable, at the time each disbursement is made on my behalf to the School under this Loan. The dollar amount of any Loan Origination Fee, if applicable, will be determined as a percentage of the Disbursement Amount. The Loan Origination Fee will be shown within the Itemization of Amount Financed on my Disclosure Statement and included in the Principal. Unless prohibited by applicable law, and unless I timely cancel a disbursement, I will not be entitled to a refund of any Loan Origination Fee, if applicable, relating to that disbursement. The Loan Origination Fee is fully earned by Lender when it is assessed (subject to Section 9 below).

## 4.  INTEREST

a. **Accrual.** Beginning on the first Disbursement Date, interest will be calculated at the Applicable Rate (see "Applicable Rate" below). Interest will be calculated at the Applicable Rate and charged on the Principal until all amounts are paid in full. Interest will be calculated on a daily simple interest basis.  The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the average number of days in a calendar year (365.25). Interest accrues on the unpaid Principal (including any Loan Origination Fee) from the Disbursement Date until the date the Loan is repaid in full (subject to Section 9 below).

b. **Capitalization of Interest.** Upon entering the Repayment Period of the Loan, any outstanding accrued interest shall be "capitalized" and added to the unpaid Principal. Such capitalized interest shall be subject to the same interest accrual as original Principal.

c. **Deferment or Forbearance.** The Lender, at its discretion, may allow a deferment or forbearance of payments on the Loan. In such an event, any interest that has accrued during such periods shall also be capitalized at the end of the deferment or forbearance period, added to the outstanding Principal and subject to the same interest rate accrual as the outstanding Principal.

d. **Applicable Rate.**

   i. **Variable Rate:** If I selected a Variable Rate, the interest rate under this Agreement shall be a variable interest rate equal to the 30-Day Average Secured Overnight Financing Rate ("SOFR") index as defined below plus a margin. The margin will be disclosed on the Disclosure Statement. The initial interest rate will be set forth in the Disclosure Statement. The interest rate will then change on the first day of each month if the SOFR changes (the "Interest Rate Change Date"). The SOFR index that shall be used each month to determine the applicable interest rate for the following month shall be the SOFR published by the Federal Reserve Bank of New York on the 5th day (or the next business day if the 5th day is not a business day) of the month immediately prior to the Interest Rate Change Date rounded up to the nearest one-eighth of one percent (0.125%).

   If at any time during the term of this Loan the SOFR is no longer reported, is no longer a representative rate, or is no longer available, the Lender will select a new index rate and margin (the "SOFR Substitute"). The SOFR Substitute will consist of (i)

alternate benchmark rate, giving due consideration to a replacement rate that has been selected or recommended by the Federal Reserve Board and/or the Federal Reserve Bank of New York, or a committee officially endorsed or convened by the Federal Reserve Board and/or the Federal Reserve Bank of New York or any successor thereto ("Relevant Governmental Body") plus (ii) a spread adjustment, or method for calculating or determining such spread adjustment, giving due consideration to (a) any selection or recommendation of a spread adjustment, or method for calculating or determining such spread adjustment, for the SOFR Substitute by the Relevant Governmental Body or, in the event no selection or recommendation has been made by a Relevant Governmental Body, (b) any evolving or then-prevailing market convention for determining the appropriate spread adjustment, or method for calculating or determining such spread adjustment, for the SOFR Substitute. The new SOFR Substitute will result in an interest rate similar to the rate that is in effect when my original SOFR is no longer reported, is no longer a representative rate, or becomes unavailable.

The interest rate will not increase more than once a month, but there is no limit on the amount that the rate could increase at one time.  The interest rate shall never exceed  25          %.  The SOFR index (or any SOFR Substitute) shall never be lower than 0.250%.  Interest shall be computed on the basis of a 365.25 day year.

    ii.   **Fixed Rate:**  If I selected a Fixed Rate, the interest rate under this Agreement shall be a fixed interest rate which will be disclosed on the Disclosure Statement.  Unless my qualification for an interest rate reduction changes, the fixed interest rate shall never increase or decrease during the In-School Period and the Repayment Period. Interest shall be computed on the basis of a 365.25 day year.

  e.  **Interest After Default:** If I default (see Section 11), and/or if Lender obtains a judgment against me on this Agreement, interest will continue to accrue on all amounts I owe under this Agreement at the Applicable Rate set forth in Section 4(d).

  f.  **Maximum Rate of Interest Allowed By Law:** In no event shall the amount of interest under this Agreement exceed the maximum rate of interest allowed by applicable law. If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the Principal I owe under this Agreement or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment (in accordance with Section 10(e)).

## 5.  APPROVAL OF AGREEMENT

  a.  When you approve my request for a Loan, you will provide me with an Approval Disclosure. Among other things, the Approval Disclosure states the total amount of my Loan, my initial interest rate and the amount of my Loan Origination Fee. If the amount of the Loan is reduced because Lender has been notified that the cost of my attendance at the School has decreased or that other financial aid I received has increased, Lender may reduce the Loan amount without sending me a new Approval Disclosure. Following my receipt of the Approval Disclosure I understand that I have thirty (30) calendar days to accept the Loan. To accept the terms of the Loan offer, I must contact Lender by the date and by the method set forth on the Approval Disclosure. **If I do not accept the Loan offer by the date and by the method set forth on the Approval Disclosure, my Application will be canceled and Lender will not make the Loan to me.**

## 6.  CANCELLATION OF AGREEMENT

  a.  If I do accept the Loan offer, Lender will provide me with a Final Disclosure. The Final Disclosure will be sent to me before any advances on the Loan are disbursed to the School. **If I am not satisfied with the terms and conditions of my Loan as approved by the Lender, I may cancel this Agreement and all Loan disbursements by the deadline for cancellation set forth in my Final Disclosure.** To cancel this Agreement, I must give you notice of cancellation using the methods set forth in the Final Disclosure, together with any verification of identity and/or authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. If I cancel this Agreement and the Loan during the cancellation period identified in the Final Disclosure, no funds will be disbursed to the School and the Loan will be cancelled. However, cancellation of this Agreement will not affect the continuing validity of Section 27 below ("Arbitration Agreement") if applicable.  I acknowledge that the Lender may cancel my Loan at any time in accordance with applicable law.

  b.  I understand that the Lender can cancel this Credit Agreement and all disbursements without telling me in advance if any of the Disclosure Statements are returned as undeliverable, if the Student Borrower does not attend the School, if the School does not certify the Student Borrower's application information and loan amount, if any information in my loan application is inaccurate, or if the Lender reasonably concludes that I no longer need the Loan.

7. DISBURSEMENTS

    a.  I authorize you, at your option, to disburse Loan funds in whole or in part (a) electronically to the School, to be applied to the Student Borrower's account, or (b) by check made jointly payable to me and the School, that is mailed to the School (at your discretion). I understand that disbursements to the School may be made in stages, as tuition and other applicable Qualified Education Expenses become due and payable.

8. STOPPING DISBURSEMENTS

    a.  I may ask you to stop making disbursements. To stop a disbursement, and any further disbursements, you must receive my request via electronic mail, or in writing, together with any verification of identity and/or authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. You may stop a disbursement, and any further disbursements, if any Loan check is not endorsed, deposited and cleared within ninety (90) days, if I am currently past due or in default  (see Section 11) on this Loan or any other loan I have with the Lender, if you learn that I am no longer attending the School, or if the School ceases to be eligible for this Loan program. I will be liable to repay all disbursements made under this Agreement, even if you or I stop subsequent disbursements for any reason or if all disbursements as originally scheduled are not made hereunder for any reason.

9. RETURNING FUNDS

    a.  **If all or any part of the Loan funds disbursed on any Disbursement Date are returned to you directly by the School, or if a Loan check is not endorsed, deposited, and cleared within ninety (90) days of that Disbursement Date, Lender will charge no interest and will not assess any Loan Fee with respect to the funds returned or with respect to the funds represented by the uncashed Loan check.**

10. REPAYMENT

    a.  **In-School Period Payment Schedule:** I have selected one of the four available repayment options during the application process.

        i.  If I elected the "Immediate Principal and Interest Repayment" option, I am choosing to begin my Repayment Period Payment Schedule immediately (see Section 10(b) below), and my first monthly payment will be due between 25 and 60 days after the first disbursement of my  Loan.

        ii.  If I elected the "Flat Repayment" option, I will make monthly payments of $25 during the In-School Period and my first payment will be due between 25 and 60 days after the first disbursement of my Loan.

        iii.  If I elected the "Interest-Only Repayment" option, I will make monthly payments of accrued interest during the In-School Period and my first payment will be due between 25 and 60 days after the first disbursement of my Loan.

        iv.  If I elected the "Fully Deferred" option, I may, but am not required to, make payments during the In-School Period.

    b.  **Repayment Period Payment Schedule:** I will make consecutive monthly payments of Principal and accrued interest during the Repayment Period until all amounts I owe in connection with this Loan are paid in full. However, I agree that my scheduled monthly payments of Principal and interest will not be less than $50 per Loan during the Repayment Period.  Monthly payment amounts will be evaluated and adjusted as necessary at set intervals during the Repayment Period, or, if applicable, as the Variable Rate changes as set forth above. The new payment amount will  be calculated to equal the amount necessary to repay my Loan in full over the number of months remaining in the Repayment Period. In the event that my monthly payment amount changes, the servicer will disclose to me my new monthly payment amount.

    c.  **Monthly Statements:** During the In-School Period and the Repayment Period, I may receive monthly statements for the repayment of my Loan. These monthly statements indicate the amount currently due, including any past due amounts. Paying the full amount due by the due date will cure any past due payments and help me avoid negative credit reporting impacts.  Failure to receive a monthly statement does not relieve me from my obligation to make all payments as required by the terms of this Agreement.

    d.  **Application of Payments:** Payments will be applied first to late fees and other fees and charges, then to accrued interest, and last to Principal. I understand that all fees and accrued interest must be paid before the outstanding Principal can be reduced.

    e.  **Prepayment:** I may, at my option, prepay all or any part of the Principal, interest and other charges at any time before payment is due (whether during the In-School Period or the Repayment Period) without penalty. Because interest does not accrue in advance, I will not receive any interest refund or rebate if I prepay in full. Because fees, if applicable, are earned when assessed, I will not receive a rebate of any portion of the fees on my account if I prepay my Loan.   If I prepay any part of my Loan, the amount I pay will be applied first to late fees and other fees and charges, then to accrued interest and last to Principal (in accordance with Section 10(d), above). Additionally, any prepayment may result in my Loan being in paid ahead status (which means payments made above the minimum monthly payment in the current month may reduce the minimum monthly payment(s) in the next and future months).

    f.  **Multiple Loans:** If I have multiple outstanding loans with Servicer, I authorize Servicer to allocate all payments, including prepayments, per Servicer's default payment allocation policy as defined on my statement. Servicer may also provide me with instructions on how I may determine my own allocation; however, if I do not provide such allocation instructions each time I make a

payment, Servicer may allocate payments per Servicer's default payment allocation policy. I may obtain a copy of Servicer's default payment allocation policy by contacting the Servicer.

g. **Late Payments, Partial Payments, and "Payment in Full":** Unless prohibited by applicable law, Lender may accept late payments, partial payments or payments marked "Payment in Full" or having similar language, without waiving any of its rights under this Agreement or under applicable law, notwithstanding any act, omission or thing which might operate as a legal or equitable discharge unless those payments are marked for special handling and are sent to the Lender, c/o University Accounting Service, LLC, P.O. Box 918, Brookfield, WI 53008-0918, or such other address as I may be given in the future.

h. **Late Charges:** I will pay a late charge if you do not receive a full monthly payment within fifteen (15) days after it becomes due. The late charge will be $25 or 5% of the unpaid amount of the monthly payment, whichever is less.

i. **Returned Payment Charges:** I agree to pay a Returned Payment Charge of $25 for any check or other instrument you receive as payment of amounts due under this Agreement that is dishonored for any reason, or if any bank returns any other payments to you (including electronic payments) unpaid. This fee is in addition to any fee that my bank may also charge me, and is in addition to the late charge described above.

j. **Amount Owing at the End of the Repayment Period:** Since interest accrues daily upon the unpaid Principal (including capitalized interest),  I may owe additional interest and late charges at the end of the Repayment Period if I made payments after my payment due dates. In such cases, my last monthly payment shall be the amount necessary to repay my Loan in full, including the outstanding Principal, all accrued and unpaid interest, and all other charges, fees and costs that are due under the terms of this Agreement. Alternatively, if I have additional amounts owing at the end of the Repayment Period, you may, but are not required to, lengthen the Repayment Period.

k. **Payment Due Despite Withdrawal from the School, Unemployment, or Dissatisfaction:** I understand that I have to repay this Loan in full, even if I withdraw or am dismissed from the School without graduating or completion, even if such failure is caused by the School ceasing to provide education services.  To the extent permitted by law, I understand that I must repay this Loan even if I am unable to obtain employment, or I am dissatisfied with the educational program paid for by this Loan.

l. **Waiver if Student Borrower Dies or Becomes Totally and Permanently Disabled:** If the Student Borrower identified on the application for this Loan dies or becomes totally and permanently disabled after the date of any disbursement of funds, you agree to waive the remaining balance of this Loan, including all Principal, fees and other charges, whether current or past due (the "Total Owed").  The foregoing benefit is not available if the Cosigner identified on this application dies or becomes totally and permanently disabled.  Total and permanent disability means the inability to work in any occupation due to a condition that began or deteriorated after the date of any disbursement of funds and the disability is expected to be permanent.  An application for disability waiver must be made to you and accompanied by a physician's statement and such other information or documentation that you may require. Payments must be made up until the time the disability application is completed to your satisfaction.  I understand that interest will continue to accrue while you review the application for a disability waiver.  If approved, the waiver will be effective as of the date of the completed application. The disability review process may take up to 12 months from when you receive a completed disability application and the final determination will be made by you in your sole and complete discretion.  If I receive a tuition refund, you will apply it to the Total Owed to fully satisfy my obligations under this Agreement.  If I or my estate receive a tuition refund and fail to pay it to you, the failure to do so will be considered a default under this Agreement, and you will have the right to collect from me or my estate the amount of the tuition refund, plus interest, and any fees and charges that accrue because of the failure to pay you the amount of the tuition refund.

## 11. DEFAULT

a. Unless prohibited by applicable law, Lender may determine my Loan to be in default if any of the following occurs:

    i. I fail to make any monthly payment at the date and time required by this Agreement;

    ii. I break any promise made in this Agreement;

    iii. Lender discovers any false or misleading statement, including forgery, in any information I have given Lender in connection with this Agreement or the Application for this Loan;

    iv.  I fail to use the proceeds of this Loan solely for Qualified Higher Education Expenses; or

    v. I make an assignment for the benefit of creditors or have voluntary or involuntary bankruptcy proceedings instituted by or against me.

## 12.  LENDER'S REMEDIES AFTER DEFAULT

a. If a default occurs, then after any applicable notice and right to cure default that is required by applicable law (see Section 14), Lender may declare the entire balance of Principal, interest and other charges owed under this Loan immediately due and payable, in full, without further notice to me. Lender may then take action to collect the entire Loan balance, including (without limitation):

    i. Bringing a lawsuit against me and obtaining a judgment against me and/or

    ii. Referring my Loan to a third party (such as a collection agency) for further collection efforts and/or

iii. Cancelling any period of deferment or forbearance, or changing my repayment option.

b. Unless prohibited by applicable law, I agree to pay any reasonable collection agency commissions, fee, and charges, reasonable attorneys' fees and actual court costs (including fees and costs in bankruptcy court and in appellate courts), and any other costs of collection incurred by Lender as the result of a default. If I default, then after any applicable waiting periods or notices required by applicable law, and unless prohibited by applicable law, Lender may also disclose information about my default to one or more national consumer credit reporting agencies, which may adversely affect my ability to obtain other credit. To maintain a good credit rating, it is to my advantage to meet my obligations under this Agreement.

c. In accordance with Section 18(b) below, the failure of the Lender to exercise any of its rights under Section 12 does not constitute a waiver of any of its rights in future instances of default.

## 13. NOTICES

a. I must immediately notify you in writing after any of the following occurs:

   i. A change in my mailing address (including my electronic mail address, if I have agreed to receive notices and other communications electronically from you) and/or my name;

   ii. I cease to be enrolled at the School; or

   iii. I graduate from the School.

b. Any notice I send you will be sent to the address you have most recently provided me for that purpose. If you have not provided any address to me, notices may be sent to the address shown on my monthly statements.

c. Except as otherwise provided by applicable law, any notice you are required to give me will be effective when mailed by first class mail to the latest address you have for me. Alternatively, if I have agreed to receive notices and other communications electronically, such notice will be effective when transmitted electronically to the latest electronic mail address you have for me. Unless prohibited by applicable law, any notice you send to either the Student Borrower or the Cosigner will be considered sent to both the Student Borrower and the Cosigner.

## 14. GOVERNING LAW

a. I understand and agree that Lender is headquartered in the ___COMMONWEALTH OF PENNSYLVANIA_____ and the Loan will be disbursed by Lender from the ___COMMONWEALTH OF PENNSYLVANIA_____ through a third-party agent. **Consequently, the provisions of this Agreement (except for Section 27) will be governed by federal law and (to the extent not preempted by federal law) the laws of the ___COMMONWEALTH OF PENNSYLVANIA_____ , without regard to conflict of law rules. This applies to all claims arising out of or related to this Agreement, including but not limited to claims arising under usury law, contract, tort, fraud, or any other provision of law.  I understand that, by signing this Agreement, I am not eligible for the protections of the law of any other state(s), including the state in which I live or the state in which the School is located.** Section 27 (Arbitration Agreement) is governed by the Federal Arbitration Act, and not by any state law concerning arbitration.

## 15. UNSECURED AGREEMENT

a. Lender waives any right it may have under any other document to claim a security interest in property to secure this Agreement. This Agreement is unsecured.

## 16. REGISTRATION OF NOTE OWNERS

a. I understand that this Loan may be sold by the Lender and any subsequent holder of this Agreement.  I hereby appoint Servicer as my authorized agent (in such capacity, the "Note Registrar") to maintain a book-entry system (the "Register") identifying the owners of this Agreement and the owners' addresses and payment instructions.  The person or persons identified as owners of this Agreement in the Register shall be deemed to be the owner(s) of the Agreement for purposes of receiving payment of principal and interest under this Agreement and for all other purposes.  Any transfer of this Agreement shall be effective only upon being recorded in the Register.  The Note Registrar may retain the services of another party to fulfill its duties as Note Registrar in which case such other party shall be acting as my agent.  The Note Registrar's recordkeeping obligations will be unaffected by any transfers of this Agreement.

## 17. INVALID PROVISIONS

a. If any provision of this Agreement is held invalid or unenforceable in arbitration under Section 27 or by a court having jurisdiction, including being held invalid or unenforceable with respect to a covered borrower under the Military Lending Act, 10 U.S.C. § 987, the remaining provisions of this Agreement shall not be affected, and this Agreement shall be construed as if such invalid or unenforceable provisions had not been included in this Agreement. However, Section 27 (Arbitration Agreement) shall be null and void if the "Class action waiver" paragraph in Section 27 is held to be invalid or unenforceable, as described more fully in Section 27 below.

## 18. WAIVERS

**NOTICE:  IF YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT, THE FOLLOWING WAIVERS DO NOT APPLY TO YOU.**

a. Unless prohibited by applicable law, I waive my rights to require you to demand payment of amounts due (known as "presentment"), to give notice that amounts due have not been paid (known as "notice of dishonor"), to obtain an official certification of non-payment (known as "protest") and, unless prohibited by applicable law, to give any other notices or demands in connection with this Agreement.

b. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise any and all of your rights on any future occasion.

c. **JURY TRIAL WAIVER:  YOU AND I ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT BUT MAY BE WAIVED IN CERTAIN CIRCUMSTANCES.  UNLESS PROHIBITED BY APPLICABLE LAW, YOU AND I KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT.  THIS JURY TRIAL WAIVER SHALL *NOT* AFFECT OR BE INTERPRETED AS MODIFYING IN ANY FASHION THE ARBITRATION AGREEMENT SET FORTH BELOW, WHICH CONTAINS ITS OWN SEPARATE JURY TRIAL WAIVER.**

## 19. EXTENSION, RENEWAL OR RELEASE; JOINT AND SEVERAL LIABILITY

a. You may extend or renew this Agreement at your discretion, and you may release either the Student Borrower or the Cosigner without affecting or releasing me.

b. Each of Student Borrower and Cosigner is jointly and severally responsible for repaying the full amount owed under this Agreement.

## 20. ASSIGNMENT

a. I may not assign this Agreement or any of its benefits or obligations. You have the right to assign your rights and duties under this Agreement without my consent and without notice to me.

## 21. CHANGES TO AGREEMENT

a. Except as otherwise indicated in this Agreement, no term or provision of this Agreement may be changed unless agreed to in writing by both Lender and me.

## 22. SIGNATURES

a. I agree that if I sign this Agreement and transmit such signed Agreement to you via facsimile, electronically transmitted portable document format, or via electronic signature and submission, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

b. I agree not to raise the use of a facsimile machine, electronic transmission in portable document format, or electronic signature and submission to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine, electronic transmission in portable document format, or electronic signature and submission as a defense to enforceability of this Agreement, and, if I am not a covered borrower under the Military Lending Act, I forever waive any such defense.

## 23. PRIVACY MATTERS

a. **Communicating with Me.** Unless prohibited by applicable law, and without limiting any other rights you may have, I expressly consent and authorize Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan to communicate with me, in connection with the application or my Loan, and in connection with all other current or future loans, using any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. Unless prohibited by applicable law, Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan may communicate with me, using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, email directed to me at a mobile telephone service, or email otherwise directed to me. UNLESS PROHIBITED BY APPLICABLE LAW, I AUTHORIZE THE USE OF SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, OR EMAILS.

b. **Updating Information.** I agree to give you updated financial, enrollment status, contact,   mailing and other information (expressly including, without limitation, my mobile telephone number) about me any time for purposes of determining eligibility for this Loan as required under this Agreement or any time you reasonably request, as well as for purposes of learning my contact address and telephone number.

c. **The School.** Unless prohibited by applicable law, I authorize that you may provide a copy of any application, this Agreement, or any other document or information regarding my Loan request to, and you may report my payment history and any defaults for this Loan or other outstanding loans to, the School.

d. **Receipt of and Reporting Credit Information.** I authorize you to investigate my creditworthiness and to receive credit information about me (and my spouse if I live in a community property state) from others, including other lenders, credit reporting agencies, and educational loan information clearinghouses. You may also furnish information about my Loan, including but not limited to, late payments, missed payments or other defaults on my account, to credit reporting agencies and other persons who may legally receive such information. A negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my Loan obligations.

e. **Communications Regarding Loan and Release of Loan Information.** Unless prohibited by applicable law, I authorize you and the School to communicate with each other, and to release information pertinent to this Loan and other outstanding loans, including any defaults, to each other and (unless I submit written directions otherwise) to members of my immediate family, including my spouse. I further authorize any lender or holder of any of my outstanding educational loans to release any information on any of my outstanding educational loans to any other lender or holder of any of my other educational loans. I authorize the School to release to you, your servicer, or your agents any requested information pertinent to this Loan including (but not limited to) enrollment status, prior loan history, and my current telephone number and address.

f. **Communications Regarding the Loan Certification and Disbursement Process.** Unless prohibited by applicable law, I authorize you and the School to communicate with any third-party service provider utilized by you to facilitate the certification of my Loan request by the School or to facilitate the process of disbursing my Loan funds to the School.

g. **Inquiries to Learn Current Address and Telephone Number.** I authorize you to release information and make inquiries to the individuals listed as references on the Application for the purpose of learning my current address and telephone number.

h. **Social Security Number.** You and the School may verify my Social Security number with the Social Security Administration (SSA). If the number on my Loan records is incorrect or missing, then I authorize the SSA to disclose my correct Social Security number to you and the School.

i. **Department of Education Information.** I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to you.

## 24. STATE AND LOCAL TAXES AND FEES (IF APPLICABLE)

a. I understand that I am responsible for payment of any and all taxes and/or fees imposed by any state or local government authority arising as a result of the indebtedness evidenced by this Agreement.

## 25. STATE LAW NOTICES I understand that the following notices are required by or necessary under state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies to Student Borrowers and/or Cosigners who live in the indicated state on the date that they submitted the application and to Student Borrowers and/or Cosigners who are residents of the state.

a. **CALIFORNIA AND UTAH RESIDENTS:** As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

b. **COLORADO RESIDENTS:** Notwithstanding any language in this Agreement to the contrary, if my address shown on this Agreement is in Colorado: (1) I will never be charged interest under this Agreement at a rate exceeding 21% per year; (2) I will never be charged a late charge under this Agreement exceeding $15; and (3) with respect to interest (as defined by federal law), this Agreement is governed by the laws of the United States and the laws of the COMMONWEALTH OF PENNSYLVANIA made part of applicable federal law. In all other respects, this Agreement is governed by the laws of the United States and, to the extent not preempted by federal law, the laws of the State of Colorado. This Loan has been approved, made, and funded, and all necessary loan documents have been accepted by the Lender in the COMMONWEALTH OF PENNSYLVANIA .

c. **IDAHO, IOWA, KANSAS, MAINE AND SOUTH CAROLINA RESIDENTS:** I will be in default if I fail to make a payment as required by this Agreement (or within 10 days of the time required by this Agreement, for Iowa residents) or if the prospect of my payment or performance is significantly impaired (for Iowa residents, if, following an event of default, the prospect of such payment is materially impaired). Lender has the burden of establishing the prospect of such impairment.

d. **INDIANA AND MAINE RESIDENTS:** The provisions of this Agreement regarding the payment of collection agency costs, court costs, and other costs of collection incurred by Lender as the result of a default do not apply to me.

e. **IOWA AND KANSAS RESIDENTS:** (For purposes of the following notice, the word "you" refers to the Student Borrower or Cosigner, not the Lender): NOTICE TO CONSUMER. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ

THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

f. **MARYLAND RESIDENTS:** Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of the _____COMMONWEALTH OF PENNSYLVANIA_____ without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

g. **IOWA, MISSOURI, NEBRASKA, TEXAS, AND UTAH RESIDENTS: ORAL OR UNEXECUTED LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT ME AND YOU (THE LENDER) AND ANY HOLDER OF THIS NOTE FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

h. **NEVADA RESIDENTS:** This is a loan for study.

i. **NEW HAMPSHIRE RESIDENTS:** If you refer this Agreement to an attorney for collection, I agree to pay your reasonable attorneys' fees.   However, if I prevail in (i) any action, suit, or proceeding you bring, or (ii) an action brought by me in connection with this Agreement, or if I successfully assert a partial defense or setoff, recoupment or counterclaim to an action brought by you, the court may withhold from you the entire amount or such portion of the attorney's fees as the court considers equitable.

j. **NEW JERSEY RESIDENTS:** The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law, except that any collection fees imposed upon default (including any reasonable attorney's fees paid to an attorney who is not our employee) are limited to 20% of the principal balance and interest outstanding.

k. **TEXAS RESIDENTS: Lender does not have to give me notice that Lender is demanding or intends to demand immediate payment of all that I owe.** .

l. **WASHINGTON RESIDENTS:** Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.

m. **WEST VIRGINIA RESIDENTS:** The provisions of this Agreement regarding the payment of collection agency costs, reasonable attorney's fees, actual court costs, and other costs of collection incurred by Lender as the result of a default do not apply to me.

n. **MARRIED WISCONSIN RESIDENTS:** For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects Lender's interest unless, prior to the time that the loan is approved, Lender is furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which I am applying is granted, I agree to notify the Lender if I have a spouse who needs to receive notification that credit has been extended to me. I agree to provide the address of my spouse with this notification.

o. **ALL WISCONSIN RESIDENTS:** I will be in default (a) if I permit to be outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after its scheduled due date or deferred due date, or if I fail to pay the first payment or last payment within 40 days of its scheduled due date or deferred due date or (b) if I fail to observe any other provision of this Agreement, the breach of which materially impairs my ability to pay the amounts due under the Agreement.

26.  FEDERAL LAW NOTICES

a. **IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**: To help the government report the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

   i.   What this means for me: When I apply for a student loan, you will ask for my name, address, date of birth and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying documents.

b. **NOTICE TO COSIGNER: (In this Notice to Cosigner, "you" and "your" mean any cosigner signing this Agreement.)**

   i.   **You are being asked to guarantee this debt. Think carefully before you do.**

   ii.  **If the Student Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and**

that you want to accept this responsibility.

   iii. **You may have to pay up to the full amount of the debt if the Student Borrower does not pay.**

   iv. **You may also have to pay late fees or collection costs, which increase this amount.**

   v. **The Lender can collect this debt from you without first trying to collect from the Student Borrower. The Lender can use the same collection methods against you that can be used against the Student Borrower, such as suing you, garnishing your wages, etc.**

   vi. **If this debt is ever in default, that fact may become part of your credit record.**

   vii. **This notice is not the contract that makes you liable for the debt.**

c. **REPORTING INFORMATION TO A CREDIT BUREAU:**

   i. **NOTICE: The Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the Student Borrower's credit report or in the Cosigner's credit report.**

d. **HOLDER NOTICE: I understand that the following notice is applicable to loans issued to finance attendance at educational institutions subject to the FTC Holder Rule under 16 CFR 433.2.**

   i. **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH  THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

e. **NOT DISCHARGEABLE:  THIS LOAN MAY NOT BE DISCHARGEABLE IN BANKRUPTCY.**

## 27.  ARBITRATION AGREEMENT -  PLEASE READ CAREFULLY

## NOTICE:  IF YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT, THE FOLLOWING ARBITRATION PROVISION DOES NOT APPLY TO YOU.

a. Unless prohibited under federal law, you and I agree that either party may elect to arbitrate - and require the other party to arbitrate - any Claim under the following terms and conditions. This Arbitration Agreement is part of the Agreement.

b. IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.

c. **DEFINITIONS:** In this Arbitration Agreement, the following definitions will apply:

   i. **"I," "me"** and **"my"** means the borrower on this Agreement; the Student Borrower on whose behalf the proceeds of the Agreement have been advanced; the Cosigner on this Agreement and the heirs, executors and assigns of all the foregoing.

   ii. **"You," "your"** and **"yours"** mean the Lender; any other subsequent holder of this Agreement; FIRSTRUST SAVINGS BANK ; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof. These terms also include any party named as a co-defendant with you in a Claim asserted by me, such as investors or potential investors, credit bureaus, credit insurance companies, closing agents, escrow agents, insurance agents, loan originators, rating agencies, loan servicers, debt collectors, loan guarantors, performance bond trustees, tuition recovery funds, the School, and any of the School's financial aid offices or officers.

   iii. **"Claimant"** means the party who first asserts a Claim in a lawsuit or arbitration proceeding.

   iv. **"Administrator"** means, as applicable, the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org (800) 778-7879 or any other party that you and I agree to in writing, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

   v. **"Claim"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Agreement, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorney's fees, collection costs or other fees or charges relating to this Agreement; (2) other provisions of this Agreement; (3) any application, disclosure or other document relating in any way to this Agreement or the transactions evidenced by this Agreement: (4) any insurance or other service or product offered or made available by or through you in connection with this Agreement, and any associated fees or charges; (5) your methods of soliciting my business; and (6) any documents, instruments, advertising or promotional materials

that contain information about this Agreement or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Agreement; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions, other equitable relief or declaratory relief. However, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. **Also, "Claim" does not include any challenge to the validity and effect of the Class Action and Multi-Party Waivers, which must be decided by a court.**

*If there is an Arbitration Agreement in place (a "Prior Arbitration Agreement") governing a prior Agreement to you (a "Prior Agreement"), "Claim" also includes disputes relating to the Prior Agreement. If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement. If I reject this Arbitration Agreement, the Claim will be governed by the Prior Arbitration Agreement, provided that, if I never had the chance to reject the Prior Arbitration Agreement and no demand for arbitration has been previously made, my rejection of this Arbitration Agreement will also serve as my rejection of the Prior Arbitration Agreement.*

d. **STARTING ARBITRATION: To initiate arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. The arbitrator(s) will be selected under the Administrator's rules, except that the arbitrator(s) must be a lawyer with at least ten years of experience or a retired judge, unless you and I agree otherwise.**

e. **LOCATION AND COSTS:** You will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. Each party must normally pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration, unless otherwise determined by the arbitrator(s).

f. **DISCOVERY; GETTING INFORMATION:** Either party may obtain from the other party prior to the hearing any information available under the Administrator's rules or any relevant information the arbitrator determines should in fairness be made available.

g. **EFFECT OF ARBITRATION AWARD:** Any state or federal court with jurisdiction and venue may enter an order enforcing this Arbitration Agreement, enter judgment upon the arbitrator's award and/or take any action authorized under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"). For any arbitration-related proceedings in which courts are authorized to take actions under the FAA, each party hereto expressly consents to the non-exclusive jurisdiction and venue of any state court of general jurisdiction or any state court of equity that is reasonably convenient to me, provided that the parties to any such judicial proceeding shall have the right to initiate such proceeding in federal court or remove the proceeding to federal court if authorized to do so by applicable federal law. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider de novo any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Except as provided in Paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.

h. **GOVERNING LAW:** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Agreement and the Administrator's rules.

i. **SURVIVAL, SEVERABILITY, PRIMACY:** This Arbitration Agreement shall survive my full payment of the Agreement; your sale or transfer of the Agreement; any legal proceeding to collect a debt owed by me to you; any bankruptcy or insolvency; any forbearance or modification granted pursuant to the Agreement; any cancellation, or request for cancellation, of the Agreement or any or all disbursements under the Agreement; and any change in the School enrollment status of the Student. If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply, provided that the entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid, subject to any right to appeal such holding. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Agreement, this Arbitration Agreement will govern.

j. **NOTICE OF CLAIM; RIGHT TO RESOLVE; SPECIAL PAYMENT:** Prior to initiating, joining or participating in any judicial or

arbitration proceeding, whether individually, as a class representative or participant or otherwise, regarding any Claim, the Claimant shall give the other party written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days to resolve the Claim. Any Claim Notice I send must include my name, address, telephone number and loan or account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. I may only submit a Claim Notice on my own behalf and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

PRINT A COPY OF THIS DOCUMENT FOR YOUR RECORDS

Rev. 07/2021

| | | |
|---|---|---|
| **FACTS** | **WHAT DOES FIRSTRUST BANK DO WITH YOUR PERSONAL INFORMATION?** | **FIRSTRUST BANK**<br><br>15 E. Ridge Pike<br>Conshohocken, PA   19428<br>**800-220-BANK** |
| **Why?** | Financial companies choose how they share your personal information.  Federal law gives consumers the right to limit some but not all sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. | |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br>■   Social Security number and account transactions<br>■   Checking account information and overdraft history<br>■   Credit history and income | |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Firstrust chooses to share; and whether you can limit this sharing. | |

| Reasons we can share your personal information | Does Firstrust share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | Yes | Yes |

| | |
|---|---|
| **To limit our sharing** | Call 800-220-BANK<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we send this notice.  When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
| **Questions?** | Call 800-220-BANK |

**Page 2**

## What we do

| | |
|---|---|
| **How does Firstrust protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings.  We restrict access to your nonpublic personal information to employees who need to know that information to provide products or services to you and protect it with multiple safeguards. |
| **How does Firstrust collect my personal information?** | We collect your personal information, for example, when you:<br>■  Open an account or apply for a loan<br>■  Show your driver's license<br>■  Provide employment information or give us your contact information<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■  sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■  affiliates from using your information to market to you<br>■  sharing for non-affiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and non-financial companies.<br>■  *Our affiliates include companies with a Firstrust Bank name and financial companies such as Firstrust Financial Resources, Apex Mortgage Corp., and FirstLease, Inc.* |
| **Non-affiliates** | Companies not affiliated by common ownership or control.  They can be financial and non-financial companies.<br>■  *Non-affiliates we share with can include investment advisors, registered representatives, securities broker dealers, and insurance agents.* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |



College Ave UNDERGRADUATE LOAN

FIRSTRUST SAVINGS BANK

# Consumer Credit Agreement

LOAN DATE: 01/24/2022

ACCOUNT ID: ████████8435

LOAN NUMBER: ████████4674

LENDER:
FIRSTRUST SAVINGS BANK

SCHOOL: COLLEGE OF NEW JERSEY (THE)

| STUDENT BORROWER | COSIGNER |
|---|---|
| SAMANTHA   SOLIVAN | ANGELO  SOLIVAN JR |
| 398 NEW BRUNSWICK AVE<br>PERTH AMBOY, NJ 08861 | 54 HAMILTON AVE<br>FORDS, NJ 08863 |

---

**Student Borrower Acknowledgment:  Prior to signing this Agreement, I have read and understood all the provisions of this Agreement. I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.**

---

**NOTICE TO CUSTOMER: (A) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED; (B) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES; (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN; (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT.**

## Student Borrower Signature & Date

**ALABAMA RESIDENTS:  CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Signature of Student Borrower

X _____

Date _____

College Ave UNDERGRADUATE LOAN

FIRSTRUST SAVINGS BANK

# Consumer Credit Agreement

---

**Cosigner Acknowledgment:  Prior to signing this Agreement below, I have read and understood all the provisions of this Agreement (including without limitation Sections 25, 26, & 27 and the Notice to Cosigner). I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.**

---

ARIZONA RESIDENTS ONLY: For purposes of this notice, the words "you" and "your" refer to the Cosigner: Marital Community Property Joinder: If you are a married Arizona resident your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will properly notify your spouse and join him or her to this loan obligation in accordance with Ariz. Rev. Stat. § 25-214 or other applicable law. You further affirm that no provision of any marital property agreement or court decree adversely affects your interest in this loan obligation.

GEORGIA RESIDENTS ONLY:  I waive any right to require the Lender to take action against the principals as required in O.C.G.A. §10-7-24.

NORTH CAROLINA RESIDENTS ONLY:  By signing as Cosigner, I waive any right I have to require the Lender to proceed in accordance with the  provisions of North Carolina General Statutes § 26-7 through § 26-9 and acknowledge that the Lender may proceed against me without first proceeding against the Student Borrower or any collateral for the loan.

**VERMONT RESIDENTS ONLY: For purposes of this notice, the word "you" means the Cosigner(s). NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE STUDENT BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**NOTICE TO CUSTOMER: (A) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED; (B) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES; (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN; (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT.**

## Cosigner Signature & Date

**ALABAMA RESIDENTS:  CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

 ANGELO  SOLIVAN JR

Signature of Cosigner

X *Angelo Solivan*
solivas1@tcnj.edu

Date  **01/24/2022**

COSIGNERS RESIDING IN CALIFORNIA, COLORADO, IOWA, MAINE, NEW YORK, SOUTH CAROLINA, WEST VIRGINIA OR WIS-CONSIN: In addition to this agreement, you must also read and sign an additional cosigner notification page.

College Ave UNDERGRADUATE LOAN

FIRSTRUST SAVINGS BANK

# Consumer Credit Agreement
This is a consumer credit transaction.

## Non-negotiable consumer note.

**READ ALL YOUR LOAN DOCUMENTS BEFORE SIGNING THIS AGREEMENT.**

**(no alterations of this form will be accepted)**

**This Agreement contains all of the terms and conditions that apply to this Loan. This Agreement completely replaces any earlier understandings or communications the Student Borrower or Cosigner may have had with the Lender, the School or any other party about the Loan.**

**Before signing this Agreement, I have read, understood and agreed to all the provisions of this Agreement, including without limitation Section 27 (Arbitration Agreement) if applicable. I agree to the terms of this Agreement and acknowledge receiving a complete copy of this Agreement. Furthermore, I understand that consummation of this transaction does not occur upon the signing of this Agreement, but rather upon the disbursement of funds by the Lender as set forth in Sections 5 and 7 below, meaning that my obligations under this Agreement only arise once such funds are disbursed. I agree that any and all proceeds of this Loan will be used solely for educational purposes as set forth in Section 2 below.**

## 1. DEFINITIONS

a. In this Credit Agreement (the "**Agreement**"), the words "**I**", "**me**", "**mine**", "**my**", mean each person who signs this Agreement as Student Borrower or as Cosigner, jointly and severally unless the applicable language specifically refers to only one or the other or specifies a different meaning.

b. "**Application**" means the application for a Loan submitted by me for this Loan (as applicable).

c. "**Business Days**" are Monday through Friday, excluding (a) days when a bank in the COMMONWEALTH OF PENNSYLVANIA is required or permitted to be closed, and (b) days when the New York Stock Exchange is closed.

d. "**Disbursement Amount**" means any amounts disbursed by the Lender and received by the School. The Disbursement Amount will not exceed the lesser of the amount requested by me or the amount approved by the School.

e. "**Disbursement Date**" means the date on any Loan check or any date the Lender electronically transmits funds to the School.

f. "**Disclosure Statement**" means any Application and Solicitation Disclosure, Approval Disclosure and/or Final Disclosure pursuant to the Federal Truth in Lending Act collectively that may be provided separately from or in conjunction with this Agreement. The Approval Disclosure and the Final Disclosure are incorporated by reference into this Agreement. In the event of any conflict between the terms of the Final Disclosure and this Agreement, the Final Disclosure shall govern.

g. "**In-School Period**" means the time period beginning with the first Disbursement Date, continuing while the Student Borrower is attending the School, and ending _6_ months after: (i) the Student Borrower's withdrawal or dismissal from the School; (ii) the Student Borrower is no longer attending the School, or (iii) the Student Borrower graduates from the School.

h. "**Lender**", "**you**" and "**your**" means FIRSTRUST SAVINGS BANK , or any subsequent holder of this Agreement, and also any agent or servicer acting on behalf of Lender or any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

i. "**Loan**" means any and all loan advances made by the Lender under the terms and conditions of this Agreement.

j. "**Loan Origination Fee**" means a fee assessed by the Lender on any Disbursement Amount.

k. "**Loan Period**" means the time period specified by the School regardless of whether a different period was specified by me in the Application. This represents the corresponding academic period for which I am requesting the Loan.

l. "**Qualified Higher Education Expenses**" means the costs of attending an eligible educational institution, including graduate school, as defined at 26 U.S.C. Sec. 221(d)(2).  Generally, these costs include tuition and certain related expenses. See IRS Publication 970 for more information.

m. "**Principal**" means (i) the Disbursement Amount plus (ii) any Loan Origination Fee under Section 3 below plus (iii) any accrued but unpaid interest under Section 4 below which is capitalized by adding it to the unpaid principal balance.

n. "**Repayment Period**" means the time period beginning on the first day after the In-School Period ends, and ending when the Loan is paid in full.  Under the terms of this Agreement, the number of monthly payments in my Repayment Period is set forth in my Disclosure Statement.

o. "**School**" means the entity set forth above in the field labeled "School."

p. "**Servicer**" means College Ave Student Loan Servicing, LLC, or any subsequent servicer of this Agreement, and also any agent or servicer acting on behalf of any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

## 2. LOAN PURPOSE

a. By signing this Agreement, I certify to Lender that the proceeds of the Loan will be used only to pay for Qualified Higher Education Expenses relating to my enrollment and attendance at the School during the Loan Period, as approved by the School and/or Lender, as applicable.  Moreover, I agree to return to the Lender any Loan proceeds not attributable to such Qualified Higher Education Expenses.

## 3. PROMISE TO PAY

a. I promise to pay to the order of the Lender the Principal, accrued interest as described in Section 4 below (see also Section 10) and all other charges, fees and costs that become due as required in this Agreement. In the event of default, I also promise to pay reasonable attorney's fees, and reasonable collection agency commissions, fees and costs, court and other collection costs, unless prohibited by applicable law. I understand that I will be liable to pay all of these amounts, in full, even if another person also signs this Agreement.

b. **Loan Fee.** I promise to pay you a Loan Origination Fee, if applicable, at the time each disbursement is made on my behalf to the School under this Loan. The dollar amount of any Loan Origination Fee, if applicable, will be determined as a percentage of the Disbursement Amount. The Loan Origination Fee will be shown within the Itemization of Amount Financed on my Disclosure Statement and included in the Principal. Unless prohibited by applicable law, and unless I timely cancel a disbursement, I will not be entitled to a refund of any Loan Origination Fee, if applicable, relating to that disbursement. The Loan Origination Fee is fully earned by Lender when it is assessed (subject to Section 9 below).

## 4. INTEREST

a. **Accrual.** Beginning on the first Disbursement Date, interest will be calculated at the Applicable Rate (see "Applicable Rate" below). Interest will be calculated at the Applicable Rate and charged on the Principal until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the average number of days in a calendar year (365.25). Interest accrues on the unpaid Principal (including any Loan Origination Fee) from the Disbursement Date until the date the Loan is repaid in full (subject to Section 9 below).

b. **Capitalization of Interest.** Upon entering the Repayment Period of the Loan, any outstanding accrued interest shall be "capitalized" and added to the unpaid Principal. Such capitalized interest shall be subject to the same interest accrual as original Principal.

c. **Deferment or Forbearance.** The Lender, at its discretion, may allow a deferment or forbearance of payments on the Loan. In such an event, any interest that has accrued during such periods shall also be capitalized at the end of the deferment or forbearance period, added to the outstanding Principal and subject to the same interest rate accrual as the outstanding Principal.

d. **Applicable Rate.**

i. **Variable Rate:** If I selected a Variable Rate, the interest rate under this Agreement shall be a variable interest rate equal to the 30-Day Average Secured Overnight Financing Rate ("SOFR") index as defined below plus a margin. The margin will be disclosed on the Disclosure Statement. The initial interest rate will be set forth in the Disclosure Statement. The interest rate will then change on the first day of each month if the SOFR changes (the "Interest Rate Change Date"). The SOFR index that shall be used each month to determine the applicable interest rate for the following month shall be the SOFR published by the Federal Reserve Bank of New York on the 5th day (or the next business day if the 5th day is not a business day) of the month immediately prior to the Interest Rate Change Date rounded up to the nearest one-eighth of one percent (0.125%).

If at any time during the term of this Loan the SOFR is no longer reported, is no longer a representative rate, or is no longer available, the Lender will select a new index rate and margin (the "SOFR Substitute"). The SOFR Substitute will consist of (i)

an alternate benchmark rate, giving due consideration to a replacement rate that has been selected or recommended by the Federal Reserve Board and/or the Federal Reserve Bank of New York, or a committee officially endorsed or convened by the Federal Reserve Board and/or the Federal Reserve Bank of New York or any successor thereto ("Relevant Governmental Body") plus (ii) a spread adjustment, or method for calculating or determining such spread adjustment, giving due consideration to (a) any selection or recommendation of a spread adjustment, or method for calculating or determining such spread adjustment, for the SOFR Substitute by the Relevant Governmental Body or, in the event no selection or recommendation has been made by a Relevant Governmental Body, (b) any evolving or then-prevailing market convention for determining the appropriate spread adjustment, or method for calculating or determining such spread adjustment, for the SOFR Substitute. The new SOFR Substitute will result in an interest rate similar to the rate that is in effect when my original SOFR is no longer reported, is no longer a representative rate, or becomes unavailable.

The interest rate will not increase more than once a month, but there is no limit on the amount that the rate could increase at one time.  The interest rate shall never exceed _25_____%.  The SOFR index (or any SOFR Substitute) shall never be lower than 0.250%.  Interest shall be computed on the basis of a 365.25 day year.

ii.   **Fixed Rate:**  If I selected a Fixed Rate, the interest rate under this Agreement shall be a fixed interest rate which will be disclosed on the Disclosure Statement.  Unless my qualification for an interest rate reduction changes, the fixed interest rate shall never increase or decrease during the In-School Period and the Repayment Period. Interest shall be computed on the basis of a 365.25 day year.

e.   **Interest After Default:** If I default (see Section 11), and/or if Lender obtains a judgment against me on this Agreement, interest will continue to accrue on all amounts I owe under this Agreement at the Applicable Rate set forth in Section 4(d).

f.   **Maximum Rate of Interest Allowed By Law:** In no event shall the amount of interest under this Agreement exceed the maximum rate of interest allowed by applicable law. If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the Principal I owe under this Agreement or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment (in accordance with Section 10(e)).

## 5.   APPROVAL OF AGREEMENT

a.   When you approve my request for a Loan, you will provide me with an Approval Disclosure. Among other things, the Approval Disclosure states the total amount of my Loan, my initial interest rate and the amount of my Loan Origination Fee. If the amount of the Loan is reduced because Lender has been notified that the cost of my attendance at the School has decreased or that other financial aid I received has increased, Lender may reduce the Loan amount without sending me a new Approval Disclosure. Following my receipt of the Approval Disclosure I understand that I have thirty (30) calendar days to accept the Loan. To accept the terms of the Loan offer, I must contact Lender by the date and by the method set forth on the Approval Disclosure. **If I do not accept the Loan offer by the date and by the method set forth on the Approval Disclosure, my Application will be canceled and Lender will not make the Loan to me.**

## 6.   CANCELLATION OF AGREEMENT

a.   If I do accept the Loan offer, Lender will provide me with a Final Disclosure. The Final Disclosure will be sent to me before any advances on the Loan are disbursed to the School. **If I am not satisfied with the terms and conditions of my Loan as approved by the Lender, I may cancel this Agreement and all Loan disbursements by the deadline for cancellation set forth in my Final Disclosure.** To cancel this Agreement, I must give you notice of cancellation using the methods set forth in the Final Disclosure, together with any verification of identity and/or authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. If I cancel this Agreement and the Loan during the cancellation period identified in the Final Disclosure, no funds will be disbursed to the School and the Loan will be cancelled. However, cancellation of this Agreement will not affect the continuing validity of Section 27 below ("Arbitration Agreement") if applicable.  I acknowledge that the Lender may cancel my Loan at any time in accordance with applicable law.

b.   I understand that the Lender can cancel this Credit Agreement and all disbursements without telling me in advance if any of the Disclosure Statements are returned as undeliverable, if the Student Borrower does not attend the School, if the School does not certify the Student Borrower's application information and loan amount, if any information in my loan application is inaccurate, or if the Lender reasonably concludes that I no longer need the Loan.

7. DISBURSEMENTS

    a. I authorize you, at your option, to disburse Loan funds in whole or in part (a) electronically to the School, to be applied to the Student Borrower's account, or (b) by check made jointly payable to me and the School, that is mailed to the School (at your discretion). I understand that disbursements to the School may be made in stages, as tuition and other applicable Qualified Education Expenses become due and payable.

8. STOPPING DISBURSEMENTS

    a. I may ask you to stop making disbursements. To stop a disbursement, and any further disbursements, you must receive my request via electronic mail, or in writing, together with any verification of identity and/or authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. You may stop a disbursement, and any further disbursements, if any Loan check is not endorsed, deposited and cleared within ninety (90) days, if I am currently past due or in default  (see Section 11) on this Loan or any other loan I have with the Lender, if you learn that I am no longer attending the School, or if the School ceases to be eligible for this Loan program. I will be liable to repay all disbursements made under this Agreement, even if you or I stop subsequent disbursements for any reason or if all disbursements as originally scheduled are not made hereunder for any reason.

9. RETURNING FUNDS

    a. **If all or any part of the Loan funds disbursed on any Disbursement Date are returned to you directly by the School, or if a Loan check is not endorsed, deposited, and cleared within ninety (90) days of that Disbursement Date, Lender will charge no interest and will not assess any Loan Fee with respect to the funds returned or with respect to the funds represented by the uncashed Loan check.**

10. REPAYMENT

    a. **In-School Period Payment Schedule:** I have selected one of the four available repayment options during the application process.

        i. If I elected the "Immediate Principal and Interest Repayment" option, I am choosing to begin my Repayment Period Payment Schedule immediately (see Section 10(b) below), and my first monthly payment will be due between 25 and 60 days after the first disbursement of my  Loan.

        ii. If I elected the "Flat Repayment" option, I will make monthly payments of $25 during the In-School Period and my first payment will be due between 25 and 60 days after the first disbursement of my Loan.

        iii. If I elected the "Interest-Only Repayment" option, I will make monthly payments of accrued interest during the In-School Period and my first payment will be due between 25 and 60 days after the first disbursement of my Loan.

        iv. If I elected the "Fully Deferred" option, I may, but am not required to, make payments during the In-School Period.

    b. **Repayment Period Payment Schedule:** I will make consecutive monthly payments of Principal and accrued interest during the Repayment Period until all amounts I owe in connection with this Loan are paid in full. However, I agree that my scheduled monthly payments of Principal and interest will not be less than $50 per Loan during the Repayment Period.  Monthly payment amounts will be evaluated and adjusted as necessary at set intervals during the Repayment Period, or, if applicable, as the Variable Rate changes as set forth above.  The new payment amount will  be calculated to equal the amount necessary to repay my Loan in full over the number of months remaining in the Repayment Period. In the event that my monthly payment amount changes, the servicer will disclose to me my new monthly payment amount.

    c. **Monthly Statements:** During the In-School Period and the Repayment Period, I may receive monthly statements for the repayment of my Loan. These monthly statements indicate the amount currently due, including any past due amounts. Paying the full amount due by the due date will cure any past due payments and help me avoid negative credit reporting impacts.  Failure to receive a monthly statement does not relieve me from my obligation to make all payments as required by the terms of this Agreement.

    d. **Application of Payments:** Payments will be applied first to late fees and other fees and charges, then to accrued interest, and last to Principal. I understand that all fees and accrued interest must be paid before the outstanding Principal can be reduced.

    e. **Prepayment:** I may, at my option, prepay all or any part of the Principal, interest and other charges at any time before payment is due (whether during the In-School Period or the Repayment Period) without penalty. Because interest does not accrue in advance, I will not receive any interest refund or rebate if I prepay in full. Because fees, if applicable, are earned when assessed, I will not receive a rebate of any portion of the fees on my account if I prepay my Loan.   If I prepay any part of my Loan, the amount I pay will be applied first to late fees and other fees and charges, then to accrued interest and last to Principal (in accordance with Section 10(d), above). Additionally, any prepayment may result in my Loan being in paid ahead status (which means payments made above the minimum monthly payment in the current month may reduce the minimum monthly payment(s) in the next and future months).

    f. **Multiple Loans:** If I have multiple outstanding loans with Servicer, I authorize Servicer to allocate all payments, including prepayments, per Servicer's default payment allocation policy as defined on my statement. Servicer may also provide me with instructions on how I may determine my own allocation; however, if I do not provide such allocation instructions each time I make a

payment, Servicer may allocate payments per Servicer's default payment allocation policy. I may obtain a copy of Servicer's default payment allocation policy by contacting the Servicer.

g. **Late Payments, Partial Payments, and "Payment in Full":** Unless prohibited by applicable law, Lender may accept late payments, partial payments or payments marked "Payment in Full" or having similar language, without waiving any of its rights under this Agreement or under applicable law, notwithstanding any act, omission or thing which might operate as a legal or equitable discharge unless those payments are marked for special handling and are sent to the Lender, c/o University Accounting Service, LLC, P.O. Box 918, Brookfield, WI 53008-0918, or such other address as I may be given in the future.

h. **Late Charges:** I will pay a late charge if you do not receive a full monthly payment within fifteen (15) days after it becomes due. The late charge will be $25 or 5% of the unpaid amount of the monthly payment, whichever is less.

i. **Returned Payment Charges:** I agree to pay a Returned Payment Charge of $25 for any check or other instrument you receive as payment of amounts due under this Agreement that is dishonored for any reason, or if any bank returns any other payments to you (including electronic payments) unpaid. This fee is in addition to any fee that my bank may also charge me, and is in addition to the late charge described above.

j. **Amount Owing at the End of the Repayment Period:** Since interest accrues daily upon the unpaid Principal (including capitalized interest),  I may owe additional interest and late charges at the end of the Repayment Period if I made payments after my payment due dates. In such cases, my last monthly payment shall be the amount necessary to repay my Loan in full, including the outstanding Principal, all accrued and unpaid interest, and all other charges, fees and costs that are due under the terms of this Agreement. Alternatively, if I have additional amounts owing at the end of the Repayment Period, you may, but are not required to, lengthen the Repayment Period.

k. **Payment Due Despite Withdrawal from the School, Unemployment, or Dissatisfaction:** I understand that I have to repay this Loan in full, even if I withdraw or am dismissed from the School without graduating or completion, even if such failure is caused by the School ceasing to provide education services.  To the extent permitted by law, I understand that I must repay this Loan even if I am unable to obtain employment, or I am dissatisfied with the educational program paid for by this Loan.

l. **Waiver if Student Borrower Dies or Becomes Totally and Permanently Disabled:** If the Student Borrower identified on the application for this Loan dies or becomes totally and permanently disabled after the date of any disbursement of funds, you agree to waive the remaining balance of this Loan, including all Principal, fees and other charges, whether current or past due (the "Total Owed").  The foregoing benefit is not available if the Cosigner identified on this application dies or becomes totally and permanently disabled.  Total and permanent disability means the inability to work in any occupation due to a condition that began or deteriorated after the date of any disbursement of funds and the disability is expected to be permanent.  An application for disability waiver must be made to you and accompanied by a physician's statement and such other information or documentation that you may require. Payments must be made up until the time the disability application is completed to your satisfaction.  I understand that interest will continue to accrue while you review the application for a disability waiver.  If approved, the waiver will be effective as of the date of the completed application. The disability review process may take up to 12 months from when you receive a completed disability application and the final determination will be made by you in your sole and complete discretion.  If I receive a tuition refund, you will apply it to the Total Owed to fully satisfy my obligations under this Agreement.  If I or my estate receive a tuition refund and fail to pay it to you, the failure to do so will be considered a default under this Agreement, and you will have the right to collect from me or my estate the amount of the tuition refund, plus interest, and any fees and charges that accrue because of the failure to pay you the amount of the tuition refund.

## 11. DEFAULT

a. Unless prohibited by applicable law, Lender may determine my Loan to be in default if any of the following occurs:

  i. I fail to make any monthly payment at the date and time required by this Agreement;

  ii. I break any promise made in this Agreement;

  iii. Lender discovers any false or misleading statement, including forgery, in any information I have given Lender in connection with this Agreement or the Application for this Loan;

  iv.  I fail to use the proceeds of this Loan solely for Qualified Higher Education Expenses; or

  v. I make an assignment for the benefit of creditors or have voluntary or involuntary bankruptcy proceedings instituted by or against me.

## 12.  LENDER'S REMEDIES AFTER DEFAULT

a. If a default occurs, then after any applicable notice and right to cure default that is required by applicable law (see Section 14), Lender may declare the entire balance of Principal, interest and other charges owed under this Loan immediately due and payable, in full, without further notice to me. Lender may then take action to collect the entire Loan balance, including (without limitation):

  i. Bringing a lawsuit against me and obtaining a judgment against me and/or

  ii. Referring my Loan to a third party (such as a collection agency) for further collection efforts and/or

CONTINUED ON NEXT PAGE

      iii.  Cancelling any period of deferment or forbearance, or changing my repayment option.

  b.  Unless prohibited by applicable law, I agree to pay any reasonable collection agency commissions, fee, and charges, reasonable attorneys' fees and actual court costs (including fees and costs in bankruptcy court and in appellate courts), and any other costs of collection incurred by Lender as the result of a default. If I default, then after any applicable waiting periods or notices required by applicable law, and unless prohibited by applicable law, Lender may also disclose information about my default to one or more national consumer credit reporting agencies, which may adversely affect my ability to obtain other credit. To maintain a good credit rating, it is to my advantage to meet my obligations under this Agreement.

  c.  In accordance with Section 18(b) below, the failure of the Lender to exercise any of its rights under Section 12 does not constitute a waiver of any of its rights in future instances of default.

## 13.  NOTICES

  a.  I must immediately notify you in writing after any of the following occurs:

      i.  A change in my mailing address (including my electronic mail address, if I have agreed to receive notices and other communications electronically from you) and/or my name;

      ii.  I cease to be enrolled at the School; or

      iii.  I graduate from the School.

  b.  Any notice I send you will be sent to the address you have most recently provided me for that purpose. If you have not provided any address to me, notices may be sent to the address shown on my monthly statements.

  c.  Except as otherwise provided by applicable law, any notice you are required to give me will be effective when mailed by first class mail to the latest address you have for me. Alternatively, if I have agreed to receive notices and other communications electronically, such notice will be effective when transmitted electronically to the latest electronic mail address you have for me. Unless prohibited by applicable law, any notice you send to either the Student Borrower or the Cosigner will be considered sent to both the Student Borrower and the Cosigner.

## 14.  GOVERNING LAW

  a.  I understand and agree that Lender is headquartered in the __COMMONWEALTH OF PENNSYLVANIA__ and the Loan will be disbursed by Lender from the __COMMONWEALTH OF PENNSYLVANIA__ through a third-party agent. **Consequently, the provisions of this Agreement (except for Section 27) will be governed by federal law and (to the extent not preempted by federal law) the laws of the __COMMONWEALTH OF PENNSYLVANIA__ , without regard to conflict of law rules. This applies to all claims arising out of or related to this Agreement, including but not limited to claims arising under usury law, contract, tort, fraud, or any other provision of law.  I understand that, by signing this Agreement, I am not eligible for the protections of the law of any other state(s), including the state in which I live or the state in which the School is located.** Section 27 (Arbitration Agreement) is governed by the Federal Arbitration Act, and not by any state law concerning arbitration.

## 15.  UNSECURED AGREEMENT

  a.  Lender waives any right it may have under any other document to claim a security interest in property to secure this Agreement. This Agreement is unsecured.

## 16.  REGISTRATION OF NOTE OWNERS

  a.  I understand that this Loan may be sold by the Lender and any subsequent holder of this Agreement.  I hereby appoint Servicer as my authorized agent (in such capacity, the "Note Registrar") to maintain a book-entry system (the "Register") identifying the owners of this Agreement and the owners' addresses and payment instructions.  The person or persons identified as owners of this Agreement in the Register shall be deemed to be the owner(s) of the Agreement for purposes of receiving payment of principal and interest under this Agreement and for all other purposes.  Any transfer of this Agreement shall be effective only upon being recorded in the Register.  The Note Registrar may retain the services of another party to fulfill its duties as Note Registrar in which case such other party shall be acting as my agent.  The Note Registrar's recordkeeping obligations will be unaffected by any transfers of this Agreement.

## 17.  INVALID PROVISIONS

  a.  If any provision of this Agreement is held invalid or unenforceable in arbitration under Section 27 or by a court having jurisdiction, including being held invalid or unenforceable with respect to a covered borrower under the Military Lending Act, 10 U.S.C. § 987, the remaining provisions of this Agreement shall not be affected, and this Agreement shall be construed as if such invalid or unenforceable provisions had not been included in this Agreement. However, Section 27 (Arbitration Agreement) shall be null and void if the "Class action waiver" paragraph in Section 27 is held to be invalid or unenforceable, as described more fully in Section 27 below.

## 18.  WAIVERS

**NOTICE:  IF YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT, THE FOLLOWING WAIVERS DO NOT APPLY TO YOU.**

a.  Unless prohibited by applicable law, I waive my rights to require you to demand payment of amounts due (known as "presentment"), to give notice that amounts due have not been paid (known as "notice of dishonor"), to obtain an official certification of non-payment (known as "protest") and, unless prohibited by applicable law, to give any other notices or demands in connection with this Agreement.

b.  You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise any and all of your rights on any future occasion.

c.  **JURY TRIAL WAIVER:  YOU AND I ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT BUT MAY BE WAIVED IN CERTAIN CIRCUMSTANCES.  UNLESS PROHIBITED BY APPLICABLE LAW, YOU AND I KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT.  THIS JURY TRIAL WAIVER SHALL *NOT* AFFECT OR BE INTERPRETED AS MODIFYING IN ANY FASHION THE ARBITRATION AGREEMENT SET FORTH BELOW, WHICH CONTAINS ITS OWN SEPARATE JURY TRIAL WAIVER.**

## 19.  EXTENSION, RENEWAL OR RELEASE; JOINT AND SEVERAL LIABILITY

a.  You may extend or renew this Agreement at your discretion, and you may release either the Student Borrower or the Cosigner without affecting or releasing me.

b.  Each of Student Borrower and Cosigner is jointly and severally responsible for repaying the full amount owed under this Agreement.

## 20.  ASSIGNMENT

a.  I may not assign this Agreement or any of its benefits or obligations. You have the right to assign your rights and duties under this Agreement without my consent and without notice to me.

## 21.  CHANGES TO AGREEMENT

a.  Except as otherwise indicated in this Agreement, no term or provision of this Agreement may be changed unless agreed to in writing by both Lender and me.

## 22.  SIGNATURES

a.  I agree that if I sign this Agreement and transmit such signed Agreement to you via facsimile, electronically transmitted portable document format, or via electronic signature and submission, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

b.  I agree not to raise the use of a facsimile machine, electronic transmission in portable document format, or electronic signature and submission to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine, electronic transmission in portable document format, or electronic signature and submission as a defense to enforceability of this Agreement, and, if I am not a covered borrower under the Military Lending Act, I forever waive any such defense.

## 23.  PRIVACY MATTERS

a.  **Communicating with Me.** Unless prohibited by applicable law, and without limiting any other rights you may have, I expressly consent and authorize Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan to communicate with me, in connection with the application or my Loan, and in connection with all other current or future loans, using any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. Unless prohibited by applicable law, Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan may communicate with me, using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, email directed to me at a mobile telephone service, or email otherwise directed to me. UNLESS PROHIBITED BY APPLICABLE LAW, I AUTHORIZE THE USE OF SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, OR EMAILS.

b.  **Updating Information.** I agree to give you updated financial, enrollment status, contact,   mailing and other information (expressly including, without limitation, my mobile telephone number) about me any time for purposes of determining eligibility for this Loan as required under this Agreement or any time you reasonably request, as well as for purposes of learning my contact address and telephone number.

CONTINUED ON NEXT PAGE

c. **The School.** Unless prohibited by applicable law, I authorize that you may provide a copy of any application, this Agreement, or any other document or information regarding my Loan request to, and you may report my payment history and any defaults for this Loan or other outstanding loans to, the School.

d. **Receipt of and Reporting Credit Information.** I authorize you to investigate my creditworthiness and to receive credit information about me (and my spouse if I live in a community property state) from others, including other lenders, credit reporting agencies, and educational loan information clearinghouses. You may also furnish information about my Loan, including but not limited to, late payments, missed payments or other defaults on my account, to credit reporting agencies and other persons who may legally receive such information. A negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my Loan obligations.

e. **Communications Regarding Loan and Release of Loan Information.** Unless prohibited by applicable law, I authorize you and the School to communicate with each other, and to release information pertinent to this Loan and other outstanding loans, including any defaults, to each other and (unless I submit written directions otherwise) to members of my immediate family, including my spouse. I further authorize any lender or holder of any of my outstanding educational loans to release any information on any of my outstanding educational loans to any other lender or holder of any of my other educational loans. I authorize the School to release to you, your servicer, or your agents any requested information pertinent to this Loan including (but not limited to) enrollment status, prior loan history, and my current telephone number and address.

f. **Communications Regarding the Loan Certification and Disbursement Process.** Unless prohibited by applicable law, I authorize you and the School to communicate with any third-party service provider utilized by you to facilitate the certification of my Loan request by the School or to facilitate the process of disbursing my Loan funds to the School.

g. **Inquiries to Learn Current Address and Telephone Number.** I authorize you to release information and make inquiries to the individuals listed as references on the Application for the purpose of learning my current address and telephone number.

h. **Social Security Number.** You and the School may verify my Social Security number with the Social Security Administration (SSA). If the number on my Loan records is incorrect or missing, then I authorize the SSA to disclose my correct Social Security number to you and the School.

i. **Department of Education Information.** I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to you.

## 24.  STATE AND LOCAL TAXES AND FEES (IF APPLICABLE)

a. I understand that I am responsible for payment of any and all taxes and/or fees imposed by any state or local government authority arising as a result of the indebtedness evidenced by this Agreement.

## 25.  STATE LAW NOTICES I understand that the following notices are required by or necessary under state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies to Student Borrowers and/or Cosigners who live in the indicated state on the date that they submitted the application and to Student Borrowers and/or Cosigners who are residents of the state.

a. **CALIFORNIA AND UTAH RESIDENTS:**  As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

b. **COLORADO RESIDENTS:**  Notwithstanding any language in this Agreement to the contrary, if my address shown on this Agreement is in Colorado: (1) I will never be charged interest under this Agreement at a rate exceeding 21% per year; (2) I will never be charged a late charge under this Agreement exceeding $15; and (3) with respect to interest (as defined by federal law), this Agreement is governed by the laws of the United States and the laws of the COMMONWEALTH OF PENNSYLVANIA made part of applicable federal law.  In all other respects, this Agreement is governed by the laws of the United States and, to the extent not preempted by federal law, the laws of the State of Colorado. This Loan has been approved, made, and funded, and all necessary loan documents have been accepted by the Lender in the COMMONWEALTH OF PENNSYLVANIA .

c. **IDAHO, IOWA, KANSAS, MAINE AND SOUTH CAROLINA RESIDENTS:** I will be in default if I fail to make a payment as required by this Agreement (or within 10 days of the time required by this Agreement, for Iowa residents) or if the prospect of my payment or performance is significantly impaired (for Iowa residents, if, following an event of default, the prospect of such payment is materially impaired). Lender has the burden of establishing the prospect of such impairment.

d. **INDIANA AND MAINE RESIDENTS:** The provisions of this Agreement regarding the payment of collection agency costs, court costs, and other costs of collection incurred by Lender as the result of a default do not apply to me.

e. **IOWA AND KANSAS RESIDENTS:** (For purposes of the following notice, the word "you" refers to the Student Borrower or Cosigner, not the Lender):  NOTICE TO CONSUMER.  1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ

THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

f. **MARYLAND RESIDENTS:** Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of the ___COMMONWEALTH OF PENNSYLVANIA___ without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

g. **IOWA, MISSOURI, NEBRASKA, TEXAS, AND UTAH RESIDENTS: ORAL OR UNEXECUTED LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT ME AND YOU (THE LENDER) AND ANY HOLDER OF THIS NOTE FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

h. **NEVADA RESIDENTS:** This is a loan for study.

i. **NEW HAMPSHIRE RESIDENTS:** If you refer this Agreement to an attorney for collection, I agree to pay your reasonable attorneys' fees.   However, if I prevail in (i) any action, suit, or proceeding you bring, or (ii) an action brought by me in connection with this Agreement, or if I successfully assert a partial defense or setoff, recoupment or counterclaim to an action brought by you, the court may withhold from you the entire amount or such portion of the attorney's fees as the court considers equitable.

j. **NEW JERSEY RESIDENTS:** The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law, except that any collection fees imposed upon default (including any reasonable attorney's fees paid to an attorney who is not our employee) are limited to 20% of the principal balance and interest outstanding.

k. **TEXAS RESIDENTS: Lender does not have to give me notice that Lender is demanding or intends to demand immediate payment of all that I owe.** .

l. **WASHINGTON RESIDENTS:** Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.

m. **WEST VIRGINIA RESIDENTS:** The provisions of this Agreement regarding the payment of collection agency costs, reasonable attorney's fees, actual court costs, and other costs of collection incurred by Lender as the result of a default do not apply to me.

n. **MARRIED WISCONSIN RESIDENTS:** For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects Lender's interest unless, prior to the time that the loan is approved, Lender is furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which I am applying is granted, I agree to notify the Lender if I have a spouse who needs to receive notification that credit has been extended to me. I agree to provide the address of my spouse with this notification.

o. **ALL WISCONSIN RESIDENTS:** I will be in default (a) if I permit to be outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after its scheduled due date or deferred due date, or if I fail to pay the first payment or last payment within 40 days of its scheduled due date or deferred due date or (b) if I fail to observe any other provision of this Agreement, the breach of which materially impairs my ability to pay the amounts due under the Agreement.

## 26.  FEDERAL LAW NOTICES

a. **IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**: To help the government report the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

   i.  What this means for me: When I apply for a student loan, you will ask for my name, address, date of birth and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying documents.

b. **NOTICE TO COSIGNER: (In this Notice to Cosigner, "you" and "your" mean any cosigner signing this Agreement.)**

   i.  **You are being asked to guarantee this debt. Think carefully before you do.**

   ii.  **If the Student Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and**

that you want to accept this responsibility.

   iii.  **You may have to pay up to the full amount of the debt if the Student Borrower does not pay.**

   iv.  **You may also have to pay late fees or collection costs, which increase this amount.**

   v.  **The Lender can collect this debt from you without first trying to collect from the Student Borrower. The Lender can use the same collection methods against you that can be used against the Student Borrower, such as suing you, garnishing your wages, etc.**

   vi.  **If this debt is ever in default, that fact may become part of your credit record.**

   vii.  **This notice is not the contract that makes you liable for the debt.**

c.  **REPORTING INFORMATION TO A CREDIT BUREAU:**

   i.  **NOTICE: The Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the Student Borrower's credit report or in the Cosigner's credit report.**

d.  **HOLDER NOTICE: I understand that the following notice is applicable to loans issued to finance attendance at educational institutions subject to the FTC Holder Rule under 16 CFR 433.2.**

   i.  **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH  THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

e.  **NOT DISCHARGEABLE:  THIS LOAN MAY NOT BE DISCHARGEABLE IN BANKRUPTCY.**

## 27.  ARBITRATION AGREEMENT -  PLEASE READ CAREFULLY

## NOTICE:  IF YOU ARE A COVERED BORROWER UNDER THE MILITARY LENDING ACT, THE FOLLOWING ARBITRATION PROVISION DOES NOT APPLY TO YOU.

a.  Unless prohibited under federal law, you and I agree that either party may elect to arbitrate - and require the other party to arbitrate - any Claim under the following terms and conditions. This Arbitration Agreement is part of the Agreement.

b.  IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.

c.  **DEFINITIONS:** In this Arbitration Agreement, the following definitions will apply:

   i.  **"I," "me"** and **"my"** means the borrower on this Agreement; the Student Borrower on whose behalf the proceeds of the Agreement have been advanced; the Cosigner on this Agreement and the heirs, executors and assigns of all the foregoing.

   ii.  **"You," "your"** and **"yours"** mean the Lender; any other subsequent holder of this Agreement; FIRSTRUST SAVINGS BANK _____; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof. These terms also include any party named as a co-defendant with you in a Claim asserted by me, such as investors or potential investors, credit bureaus, credit insurance companies, closing agents, escrow agents, insurance agents, loan originators, rating agencies, loan servicers, debt collectors, loan guarantors, performance bond trustees, tuition recovery funds, the School, and any of the School's financial aid offices or officers.

   iii.  **"Claimant"** means the party who first asserts a Claim in a lawsuit or arbitration proceeding.

   iv.  **"Administrator"** means, as applicable, the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org (800) 778-7879 or any other party that you and I agree to in writing, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

   v.  **"Claim"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Agreement, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorney's fees, collection costs or other fees or charges relating to this Agreement; (2) other provisions of this Agreement; (3) any application, disclosure or other document relating in any way to this Agreement or the transactions evidenced by this Agreement: (4) any insurance or other service or product offered or made available by or through you in connection with this Agreement, and any associated fees or charges; (5) your methods of soliciting my business; and (6) any documents, instruments, advertising or promotional materials

that contain information about this Agreement or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Agreement; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions, other equitable relief or declaratory relief. However, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. **Also, "Claim" does not include any challenge to the validity and effect of the Class Action and Multi-Party Waivers, which must be decided by a court.**

*If there is an Arbitration Agreement in place (a "Prior Arbitration Agreement") governing a prior Agreement to you (a "Prior Agreement"), "Claim" also includes disputes relating to the Prior Agreement. If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement. If I reject this Arbitration Agreement, the Claim will be governed by the Prior Arbitration Agreement, provided that, if I never had the chance to reject the Prior Arbitration Agreement and no demand for arbitration has been previously made, my rejection of this Arbitration Agreement will also serve as my rejection of the Prior Arbitration Agreement.*

d. **STARTING ARBITRATION: To initiate arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. The arbitrator(s) will be selected under the Administrator's rules, except that the arbitrator(s) must be a lawyer with at least ten years of experience or a retired judge, unless you and I agree otherwise.**

e. **LOCATION AND COSTS:** You will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. Each party must normally pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration, unless otherwise determined by the arbitrator(s).

f. **DISCOVERY; GETTING INFORMATION:** Either party may obtain from the other party prior to the hearing any information available under the Administrator's rules or any relevant information the arbitrator determines should in fairness be made available.

g. **EFFECT OF ARBITRATION AWARD:** Any state or federal court with jurisdiction and venue may enter an order enforcing this Arbitration Agreement, enter judgment upon the arbitrator's award and/or take any action authorized under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"). For any arbitration-related proceedings in which courts are authorized to take actions under the FAA, each party hereto expressly consents to the non-exclusive jurisdiction and venue of any state court of general jurisdiction or any state court of equity that is reasonably convenient to me, provided that the parties to any such judicial proceeding shall have the right to initiate such proceeding in federal court or remove the proceeding to federal court if authorized to do so by applicable federal law. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider de novo any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Except as provided in Paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.

h. **GOVERNING LAW:** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Agreement and the Administrator's rules.

i. **SURVIVAL, SEVERABILITY, PRIMACY:** This Arbitration Agreement shall survive my full payment of the Agreement; your sale or transfer of the Agreement; any legal proceeding to collect a debt owed by me to you; any bankruptcy or insolvency; any forbearance or modification granted pursuant to the Agreement; any cancellation, or request for cancellation, of the Agreement or any or all disbursements under the Agreement; and any change in the School enrollment status of the Student. If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply, provided that the entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid, subject to any right to appeal such holding. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Agreement, this Arbitration Agreement will govern.

j. **NOTICE OF CLAIM; RIGHT TO RESOLVE; SPECIAL PAYMENT:** Prior to initiating, joining or participating in any judicial or

arbitration proceeding, whether individually, as a class representative or participant or otherwise, regarding any Claim, the Claimant shall give the other party written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days to resolve the Claim. Any Claim Notice I send must include my name, address, telephone number and loan or account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. I may only submit a Claim Notice on my own behalf and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

PRINT A COPY OF THIS DOCUMENT FOR YOUR RECORDS

Rev. 07/2021

| **FACTS** | **WHAT DOES FIRSTRUST BANK DO WITH YOUR PERSONAL INFORMATION?** | **FIRSTRUST BANK**<br><br>15 E. Ridge Pike<br>Conshohocken, PA  19428<br>800-220-BANK |
|---|---|---|

| **Why?** | Financial companies choose how they share your personal information.  Federal law gives consumers the right to limit some but not all sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
|---|---|
| **What?** | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br>▪  Social Security number and account transactions<br>▪  Checking account information and overdraft history<br>▪  Credit history and income |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Firstrust chooses to share; and whether you can limit this sharing. |

| **Reasons we can share your personal information** | **Does Firstrust share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | Yes | Yes |

| **To limit our sharing** | Call 800-220-BANK<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we send this notice.  When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| **Questions?** | Call 800-220-BANK |

**Page 2**

## What we do

| | |
|---|---|
| **How does Firstrust protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings.  We restrict access to your nonpublic personal information to employees who need to know that information to provide products or services to you and protect it with multiple safeguards. |
| **How does Firstrust collect my personal information?** | We collect your personal information, for example, when you: <br>• Open an account or apply for a loan <br>• Show your driver's license <br>• Provide employment information or give us your contact information <br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only <br>• sharing for affiliates' everyday business purposes – information about your creditworthiness <br>• affiliates from using your information to market to you <br>• sharing for non-affiliates to market to you <br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and non-financial companies. <br>• *Our affiliates include companies with a Firstrust Bank name and financial companies such as Firstrust Financial Resources, Apex Mortgage Corp., and FirstLease, Inc.* |
| **Non-affiliates** | Companies not affiliated by common ownership or control.  They can be financial and non-financial companies. <br>• *Non-affiliates we share with can include investment advisors, registered representatives, securities broker dealers, and insurance agents.* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |



# College Ave UNDERGRADUATE LOAN
# Fixed Rate Final Disclosure

ACCOUNT NUMBER: ██████4674

DATE: 01/27/2022

| BORROWER | COSIGNER | CREDITOR |
|---|---|---|
| SAMANTHA  SOLIVAN | ANGELO  SOLIVAN JR | FIRSTRUST SAVINGS BANK |
| 398 NEW BRUNSWICK AVE<br>PERTH AMBOY, NJ 08861 | 54 HAMILTON AVE<br>FORDS, NJ 08863 | **c/o College Ave Student Loans**<br>233 N. King St., Ste. 400<br>Wilmington, DE  19801 |

**RIGHT TO CANCEL**

You have a right to cancel this transaction, without penalty, by midnight on

02/02/2022

No funds will be disbursed to your school until after this time.

You may cancel by calling the lender at 844-422-7502 or by sending a signed letter requesting cancellation to the address below, postmarked by midnight on

02/02/2022

College Ave Student Loans
233 N. King St., Ste. 400
Wilmington, DE 19801

## LOAN RATES & ESTIMATED TOTAL COSTS

| TOTAL LOAN AMOUNT | INTEREST RATE | FINANCE CHARGE | TOTAL OF PAYMENTS |
|---|---|---|---|
| $  10,000.00 | 13.190 % | $ 20,269.40 | $ 30,269.40 |
| The total amount you are borrowing. | Your fixed interest rate. | The estimated dollar amount the credit will cost you. | The estimated amount you will have paid when you have made all payments. |

### Itemization Of Amount Financed

| | |
|---|---|
| **Amount paid to you** | $ |
| **Amount paid to others on your behalf**<br>SCHOOL CODE: 00264200 | +<br>$ 10,000.00 |
| **Amount Financed (total amount provided)** | =<br>$ 10,000.00 |
| **Initial Finance Charges (total)**<br>**Orig Fee**<br>$ 0 | +<br>$ 0 |
| **Total Loan Amount** | =<br>$ 10,000.00 |

### About Your Interest Rate

- **Your interest rate is fixed.** This means that your interest rate will never increase or decrease unless your qualification for an interest rate reduction changes. Your interest rate is based on your or your cosigner's, if applicable, credit history, information you provide in the application, and other factors. For more information on this interest rate, see the Reference Notes.
- Your **Annual Percentage Rate (APR)** is ___12.663_ %. The APR is typically different  than the interest rate since it considers fees and reflects the cost of your loan as a yearly rate. For more information about the APR, see Reference Notes.

### Fees

- **Origination Fee Charges:**  There is no origination fee for this program.
- **Late Charges:** If you do not make your monthly payment within 15 days of the due date, you will be assessed a late charge equal to 5% of the unpaid amount of the monthly payment or $25, whichever is less.
- **Returned Payment Charge:** $25.
- **Collection and Default Charges:**  In the event of a default, you may incur additional collection charges unless prohibited by applicable law.

## ESTIMATED REPAYMENT SCHEDULE & TERMS

| 180 **MONTHS** | **MONTHLY PAYMENTS** |
|---|---|
| | at __13.190__% the fixed interest rate of your loan |
| 03/07/2022 – 11/07/2024 | **FLAT PAYMENTS**<br><br>1ST PAYMENT  $ 25.00<br><br>PAYMENTS   33<br><br>( $ 2,802.25  IN<br>INTEREST WILL ACCRUE DURING THIS TIME) |
| 12/07/2024 – 10/07/2039<br><br>MONTHLY PAYMENTS  179 | $ 163.58 |
| 11/07/2039<br><br>MONTHLY PAYMENT  1 | $ 163.58 |
| | **ESTIMATED TOTAL OF PAYMENTS**<br><br>$  30,269.40 |

## REFERENCE NOTES

### FIXED INTEREST RATE

- This loan has a fixed interest rate.

- The fixed interest rate is determined by your and, if applicable, your cosigner's credit history, information you provide in the application, and other factors.

- Your fixed interest rate will never increase or decrease during the life of the loan unless your qualification for an interest rate reduction changes.

- The interest rate may be higher or lower than your Annual Percentage Rate (APR) because the APR considers certain fees you pay to obtain this loan, the interest rate, and whether you defer (postpone) payments while in school.

- Borrowers can take advantage of a 0.25% interest rate reduction by setting up and maintaining active and automatic monthly ACH withdrawals of their loan payment.

- Your In-School payment(s), if any, is set forth in the Estimated Repayment Schedule & Terms table, above. After the In-School Period, the minimum, monthly payment amount is $50.

### CONDITIONAL APPROVAL

- This approval is conditioned upon the school certifying the Student Borrower's application information and loan amount, and verifying the Student Borrower's satisfactory academic progress.

### BANKRUPTCY LIMITATIONS

- If you file for bankruptcy you may still be required to pay back this loan.

### REPAYMENT OPTIONS

- You have elected the repayment option set forth in the Estimated Repayment Schedule & Terms table, above. You may choose one of four repayment options: to fully defer payments, or to make flat payments of $25/month, or to pay interest only, or to make full payments during the In-School Period. Any interest that is not paid during the In-School Period will accrue and will be added to your balance when you enter repayment. More information about changing your repayment option, repayment deferral or forbearance options is available in your Credit Agreement.

### PREPAYMENTS

- If you choose to prepay your principal at any time, you will not be charged a prepayment penalty. Because interest does not accrue in advance, you will not be entitled to a refund of part of the finance charge if you prepay.

**See your Credit Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.**

## MILITARY LENDING ACT CONSUMER DISCLOSURE

If you are a member of the armed forces on active duty, or a spouse or dependent of a member of the armed forces on active duty, as defined in the Military Lending Act, 10 U.S.C. § 987, the following information applies to you.

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

Please call 844-422-7505 for a recitation of the above disclosure along with a description of the repayment options for your specific product (in-school loan, parent loan or refinance loan).

PRINT A COPY OF THIS DOCUMENT FOR YOUR RECORDS

**BILL OF SALE AND ASSIGNMENT**

For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Account Purchase Agreement (the "Agreement") dated March 21, 2024 by and among College Ave Student Loan Servicing, LLC ("Seller"), UMB BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as trustee (the "Buyer Trustee") on behalf of Southwood Financial Trust I (the "Buyer Trust", and the Buyer Trustee acting for and on behalf of the Buyer Trust, the "Buyer") and Southwood Financial LLC, (the "Buyer Administrator"), Seller, effective as of June 24, 2024 (the "Closing Date") hereby transfers, sells, conveys, grants, assigns and delivers to Buyer, its successors and assigns, without recourse and without representations or warranties, express or implied, of any type, kind or nature except as set forth in the Agreement, to the extent of its ownership, all of Seller's right, title and interest in and to each of the Accounts as set forth in the Account Schedule attached hereto as Exhibit I delivered by Seller to Buyer on the Closing Date, and as further described in the Agreement.

Any capitalized terms used but not defined in this Bill of Sale and Assignment shall have the meaning set forth in the Agreement.

This Bill of Sale and Assignment will be governed by the laws of the state of Delaware without regard to the conflicts-of-laws rules thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Bill of Sale and Assignment as of the date first written above."

College Ave Student Loan Servicing, LLC, as Seller


By: _____
Name (print):   James Keller
Title:  Chief Financial Officer


UMB Bank, National Association, not in its individual capacity but solely as trustee on behalf of Southwood Financial Trust I, as Buyer

By: _____
Kristin Moore (Jun 25, 2024 08:34 EDT)
Name: Kristin L. Moore
Title: Senior Vice President


Southwood Financial LLC, in its capacity as Trust Manager and Buyer Administrator


By: _____Matt Murray_____
Matt Murray (Jun 24, 2024 19:42 EDT)
Name: Matt Murray
Title: Chief Financial Officer



8541     Solivan          1,539.86          2/7/2022

|  Court's Address and Phone Number:<br>MIDDLESEX Special Civil Part<br>56 PATERSON STREET, 3RD FLOOR<br>P.O. BOX 1146<br>NEW BRUNSWICK, NJ 08903-1146<br><br>732-645-4300 ext.88383 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br><br>**MIDDLESEX**  County<br>Docket No: **MID-DC-008769-25**<br><br>**Civil Action**<br><br>**CONTRACT DISPUTE** |
|---|---|

## YOU ARE BEING SUED!

| **Person or Business Suing You (***Plaintiff***)**<br>SOUTHWOOD FINANCIAL LLC AS TRUST MANAGER FOR SOUTHWOOD FINANCIAL TRUST I ON BEHALF OF College Ave<br>See Page 3 for Plaintiff list | **Person or Business Being Sued (***Defendant***)**<br>SAMANTHA SOLIVAN & ANGELO SOLIVAN<br><br><br>See Page 3 for Defendant list |
|---|---|
| **Plaintiff's Attorney Information**<br>SCOTT J BEST<br>WELTMAN WEINBERG & REIS CO LPA<br>520 WALNUT ST STE 1355<br>PHILADELPHIA, PA 19106-0000<br>215-599-1500 | **The Person or Business Suing You Claims You Owe the Following:** |

| | |
|---|---:|
| Demand Amount | $12832.19 |
| Filing Fee | $80.00 |
| Service Fee | $14.00 |
| Attorney's Fees | $0.00 |
| **TOTAL** | **$12926.19** |

### FOR JUDICIARY USE ONLY

In the attached complaint, the person or business suing you briefly tells the court his or her version of the facts of the case and how much money he or she claims you owe.  **If you do not answer the complaint, you may lose the case automatically and the court may give the plaintiff what the plaintiff is asking for, plus interest and court costs.  You have 35 days from the date of service to file your answer or a signed agreement.**  If a judgment is entered against you, a Special Civil Part Officer may seize your money, wages or personal property to pay all or part of the judgment.  The judgment is valid for 20 years.

**IF YOU DISAGREE WITH THE PLAINTIFF'S CLAIMS, A WRITTEN ANSWER OR SIGNED AGREEMENT MUST BE RECEIVED BY THE COURT ABOVE, ON OR BEFORE 06/04/2025, OR THE COURT MAY RULE AGAINST YOU.  IF YOU DISAGREE WITH THE PLAINTIFF, YOU MUST DO ONE OR BOTH OF THE FOLLOWING:**

1.  ***Answer the complaint***.  An answer form that will explain how to respond to the complaint is available at any of the New Jersey Special Civil Part Offices or on the Judiciary's Internet site njcourts.gov under the section for Forms.  If you decide to file an answer to the complaint made against you:
    - Fill out the Answer form AND pay the applicable filing fee by check or money order payable to: ***Treasurer, State of New Jersey***.  Include **MID-DC-008769-25** (your Docket Number) on the check.
    - Mail or hand deliver the completed Answer form and the check or money order to the court's address listed above.
    - Hand deliver or send by regular mail a copy of the completed Answer form to the plaintiff's attorney.  If the plaintiff does not have an attorney, send your completed answer form to the plaintiff by regular and certified mail.  This MUST be done at the same time you file your Answer with the court on or before **06/04/2025**.

    **Please Note – If you file an Answer your case will be sent to a settlor to try to resolve your case prior to trial.**

2.  ***Resolve the dispute.***  Contact the plaintiff's attorney, or contact the plaintiff if the plaintiff does not have an attorney, to resolve this dispute.  The plaintiff may agree to accept payment arrangements.  If you reach an agreement, mail or hand deliver the **SIGNED** agreement to the court's address listed above on or before **06/04/2025**.

**Please Note - You may wish to get an attorney to represent you.**  If you cannot afford to pay for an attorney, free legal advice may be available by contacting Legal Services at 732-249-7600. If you can afford to pay an attorney but do not know one, you may call the Lawyer Referral Services of your local County Bar Association at 732-828-0053. Notify the court now if you need an interpreter or an accommodation for a disability for any future court appearance.

**/s/ Michelle M. Smith**

Clerk of the Superior Court



| | |
|---|---|
| Dirección y teléfono del tribunal<br>Parte Civil Especial de MIDDLESEX<br>56 PATERSON STREET, 3RD FLOOR<br>P.O. BOX 1146<br>NEW BRUNSWICK, NJ 08903-1146<br>732-645-4300 ext.88383 | **El Tribunal Superior de Nueva Jersey**<br>**División de Derecho, Parte Civil Especial**<br><br>Condado de **MIDDLESEX**<br>Número del expediente **MID-DC-008769-25**<br>**Demanda de Acción Civil**<br>NOTIFICACIÓN DE DEMANDA<br>**CONTRACT DISPUTE** |

## ¡LE ESTÁN DEMANDANDO!

| | | |
|---|---|---|
| **Persona o entidad comercial que le está demandando** *(el demandante)*<br>SOUTHWOOD FINANCIAL LLC AS TRUST MANAGER FOR SOUTHWOOD FINANCIAL TRUST I ON BEHALF OF College Ave<br>See Page 3 for Plaintiff list | **Persona o comercial ser demandada** *(el demandado)*<br>SAMANTHA SOLIVAN & ANGELO SOLIVAN<br><br>See Page 3 for Defendant list | |
| **Información sobre el abogado del demandante**<br>SCOTT J BEST<br>WELTMAN WEINBERG & REIS CO LPA<br>520 WALNUT ST STE 1355<br>PHILADELPHIA, PA 19106-0000<br>215-599-1500 | **La persona o comercial que le está demandando afirma que usted le debe lo siguiente:** | |
| | Cantidad a la vista | $12832.19 |
| | Tasa judicial | $80.00 |
| | Cargo del emplazamiento | $14.00 |
| | Honorarios del abogado | $0.00 |
| | **TOTAL** | **$12926.19** |

### PARA USO EXCLUSIVO DEL PODER JUDICIAL

En la demanda adjunta la persona o entidad comercial que le está demandando le informa brevemente al juez su versión de los hechos de la causa y la suma de dinero que afirma que usted le debe. **Si usted no responde a la demanda puede perder la causa automáticamente y el juez puede dar al demandante lo que está pidiendo más intereses y los costos legales. Usted tiene 35 días a partir de la fecha del emplazamiento para presentar su respuesta o un acuerdo firmado.** Si se dicta un fallo en su contra, un Oficial de la Parte Civil Especial puede embargar su dinero, sueldo o sus bienes muebles (personales) para pagar todo el fallo o una parte del mismo. El fallo es válido por 20 años.

**SI USTED NO ESTÁ DE ACUERDO CON LAS ALEGACIONES DEL DEMANDANTE, EL TRIBUNAL TIENE QUE RECIBIR UNA RESPUESTA POR ESCRITO O UN ACUERDO FIRMADO PARA EL 06/04/2025 O ANTES DE ESA FECHA, O EL JUEZ PUEDE EMITIR UN FALLO EN SU CONTRA. SI USTED <u>NO ESTÁ DE ACUERDO</u> CON EL DEMANDANTE, DEBE HACER <u>UNA</u> DE LAS SIGUIENTES COSAS <u>O LAS DOS:</u>**

1. *Responder a la demanda*. Un formulario de respuesta que le explicará cómo responder a la demanda está disponible en cualquiera de las Oficinas de la Parte Civil Especial de Nueva Jersey y en el sitio Internet del Poder Judicial njcourts.gov bajo la sección de formularios (Forms). Si usted decide presentar una respuesta a la demanda que se hizo en su contra:
   - Llene el formulario de Respuesta Y pague la tasa judicial de presentación que corresponda mediante un cheque o giro bancario o postal acreditable al: "*Treasurer, State of New Jersey* " (Tesorero del Estado de Nueva Jersey). Incluya **MID-DC-008769-25** (el número de su expediente) en el cheque.
   - Envíe por correo el formulario de Repuesta llenado y el cheque o giro bancario o postal a la dirección del tribunal que figura más arriba, o entréguelos personalmente en dicha dirección.
   - Entregue personalmente o envíe por correo común una copia del formulario de Repuesta llenado al abogado del demandante. Si el demandante no tiene abogado, envíe su formulario de respuesta llenado al demandante por correo común y por correo certificado. Esto SE TIENE que hacer al mismo tiempo que presente su Respuesta al tribunal a más tardar el <u>06/04/2025</u>.

   **Por favor tenga en cuenta que si usted presenta una Respuesta, su causa se enviará a un fideicomitente para tratar de resolver la causa antes del juicio.**

2. *Resolver la disputa.* Comuníquese con el abogado del demandante, o con el demandante si éste no tiene abogado, para resolver esta disputa. El demandante puede estar de acuerdo con aceptar arreglos de pago. **Si llegara a un acuerdo, envíe por correo o entregue personalmente el acuerdo FIRMADO** a la dirección del tribunal que figura más arriba, o entréguelo personalmente en dicha dirección a más tardar el <u>06/04/2025</u>.

**Nota - Puede usted quiera conseguir que un abogado para que lo represente.** Si usted no puede pagar a un abogado, podría obtener consejos legales gratuitos si se comunica con Legal Services (Servicios Legales) llamando al 732-249-7600. Si usted puede pagar a un abogado, pero no conoce a ninguno, puede llamar al Lawyer Referral Services (Servicios de Recomendación de Abogados) del Colegio de Abogados (Bar Association) de su condado local al 732-828-0053. Notifique al tribunal ahora si usted necesita un intérprete o un arreglo por una discapacidad para cualquier comparecencia futura en el tribunal.



**/s/ Michelle M. Smith**

Subsecretario(a) del Tribunal Superior



| Court's Address and Phone Number:<br>MIDDLESEX Special Civil Part<br>56 PATERSON STREET, 3RD FLOOR<br>P.O. BOX 1146<br>NEW BRUNSWICK, NJ 08903-1146<br><br><br>732-645-4300 ext.88383 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br><br>**MIDDLESEX** County<br>Docket No: **MID-DC-008769-25**<br><br>**Civil Action**<br><br>**SUMMONS**<br><br>**CONTRACT DISPUTE** |
|---|---|
| **Additional Plaintiffs/demandantes adicionales** | **Additional Defendants/demandados adicionales**<br>ANGELO SOLIVAN |